UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARLES H. CHRISTENSEN, D.O.,

     Plaintiff,

vs.

McLAREN MEDICAL GROUP, a
subsidiary of McLAREN HEALTH CARE
CORPORATION,

     Defendant.

---

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CHARLES H. CHRISTENSEN, D.O., by and through his attorneys, TERESA J. GORMAN, PLLC, for his Complaint, states:

## JURISDICTION AND PARTIES

1.    This suit is brought pursuant to the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*., the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq*., and Michigan common law.

2.    This court has jurisdiction pursuant to 28 U.S.C. § 1331, and 28 U.S.C. §1367(a).

3.    Plaintiff is a citizen of the United States and resides in Port Austin, Michigan.

4.      Defendant is a Michigan corporation doing business throughout Michigan and, relevant to this matter, at 1100 and 1160 South Van Dyke, Bad Axe, Michigan 48413.

5.      Plaintiff was Defendant's employee within the meaning of the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*., and the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq*.

6.      Defendant meets all of the requirements for employer status under the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*., and the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq*.

7.      The amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorney fees.

8.      The events giving rise to this cause of action occurred in the City of Bad Axe, Huron County, Michigan, in the Eastern District of Michigan. Accordingly, venue lies in the United States District Court for the Eastern District of Michigan under 28 USC §1391(b).

## GENERAL ALLEGATIONS

9.      Plaintiff incorporates by reference all previous paragraphs.

10.     Plaintiff is a 55 year old male.

11.     Plaintiff is a licensed physician with a specialty in pediatric medicine.

12.    Plaintiff has been afflicted with learning disabilities including, but not limited to, dyslexia all of his life.

13.    Since Plaintiff was in the first grade and continuing through all educational institutions attended, all board examinations, and his medical residency, Plaintiff was provided with accommodations for his disabilities (eg. extra time, distraction free environment, notes in class, and dictation).

14.    Plaintiff's learning disabilities including, but not limited to, dyslexia, are disabling conditions under the Americans With Disabilities Act, as amended, and the Persons With Disabilities Civil Rights Act, in that they affect major life activities, including but not limited to, reading and writing.

15.    In 2012, Plaintiff commenced employment as a full time staff pediatrician with Huron Medical Center ("HMC") in Bad Axe, Michigan.

16.    Plaintiff is a qualified employee under the Americans With Disabilities Act who can perform the essential functions of his job, with or without an accommodation.

17.    Plaintiff has always performed his job duties in an exemplary manner.

18.    From 2012 to 2016, Plaintiff did not require the assistance of a scribe because the practice was not that busy.  In 2016, once Plaintiff built the practice and due to EMR requirements, Plaintiff requested the accommodation of a scribe to

assist in reading, editing, writing, and inputting information into the Electronic Medical Record.

19.     HMC granted the request for accommodation without any question and a scribe was provided.

20.     In 2019, Defendant replaced HMC and Plaintiff became an employee of McLaren Medical Group.

21.     The accommodation of the scribe to assist Plaintiff continued without question until 2022.

22.     In early 2021, negotiations for Plaintiff's first and only contract with Defendant commenced.

23.     In 2021, Plaintiff had several meeting with Defendant's human resources manager and upper management where he reiterated that he has a learning disability that required that he have access to a scribe.

24.     After much negotiation, Defendant agreed to various terms including the continued accommodation of a scribe.

25.     From April to August 2021, a written contract was developed.

26.     On July 22, 2021, Plaintiff signed the contract which included a separate page guaranteeing the accommodation of a scribe.

27.     In late 2021, Plaintiff received the contract from Defendant but with the page guaranteeing the accommodation of scribe missing.

28.     In 2022, Michigan, like all states, passed a mandate for all doctors to use E-Prescriptions for controlled substances.  However, due to his disabilities, Plaintiff petitioned the State and was granted the accommodation of using paper prescriptions and has done so for the duration of his career.  Defendant was aware of the State's accommodation.

29.     In August 2022, the person performing the scribe duties voluntarily separated from employment with Defendant to assume a position in education.

30.     Plaintiff immediately requested that a new scribe be provided as he continued to need the assistance of a scribe to run the practice.

31.     Defendant refused to replace the scribe and denied Plaintiff's repeated requests for the long-standing accommodation.

32.     On September 22, 2022, Plaintiff met with Defendant's management and reiterated the need for the scribe.  At the meeting, a member of Defendant's management escalated the conversation by verbally assaulting Plaintiff in the presence of staff, screaming at him "what makes you so special??" while approaching him in a menacing manner.  Plaintiff was forced to state in the presence of staff members that he has a learning disability and that the accommodation of a scribe had been negotiated in his contract.

33.    Over the next few months, Defendant continued to discriminate and retaliate in numerous ways, including by removing competent staff and replacing them with less competent individuals and engaging in sporadic workplace cleaning.

34.    On January 5, 2023, Plaintiff met with Defendant's Director of Medicine and the head of Human Resources in McLaren's Flint office.  During this meeting, Plaintiff was yelled at about the September meeting encounter and the loss of staff.

35.    At the January 5, 2023 meeting, Plaintiff complained in no uncertain terms about the hostile work environment and discrimination to which he was being subjected.  Defendant's Director of Medicine responded by threatening to place Plaintiff on administrative leave and telling Plaintiff to be quiet.

36.    In May 2023, Plaintiff provided proposed terms for a new contract as his original contract was expiring.  The proposed terms included another written request for the accommodation of a scribe.

37.    Defendant declined to engage in contract negotiations despite Plaintiff's multiple attempts.

38.    On June 6, 2024, Plaintiff met again with the Defendant's Director of Medicine and the Regional COO to negotiate a new contract.

39.     During the June 6, 2024 meeting, Plaintiff complained again in detail about the hostile work environment, discrimination and retaliation to which he had been subjected for the past 2+ years.

40.     Defendant's Director of Medicine and Regional COO feigned understanding and concern but the draft contract that followed in August 2024 evidenced that nothing would change as it did not include the accommodation of a scribe.

41.     On August 29, 2024, Plaintiff met with Defendant's Director of Operations about the contract and again complained about the failure to address his concerns of harassment and discrimination.

42.     The next day, August 30, 2024, was a Friday and the practice, as usual, was closed.  At 9:00am, Plaintiff received a telephone call at home from Officer Duffy of the Bad Axe Police Department inquiring about an item in Plaintiff's private office that had been described to the police as a bomb.

43.     Plaintiff assured the officer that the item was not a bomb but was only a battery pack used for electric bikes that Plaintiff and his daughter ride and that the battery had been in plain sight in the same spot for months.

44.     The officer also questioned Plaintiff about empty 22lr brass and targets that were found in Plaintiff's private office.

45.     Plaintiff advised the officer that they were from a nearby target shooting range and that target shooting was one of his hobbies.  As with the battery, the brass and the targets had been in the office for months to years.

46.     The officer seemed satisfied with Plaintiff's explanations and hung up.

47.     Plaintiff left home and drove to his office.

48.     Plaintiff was unaware that the hospital and medical building where his office was located were in lock down until he arrived.

49.     When Plaintiff arrived at the scene, he was questioned again about the findings.

50.     Plaintiff answered all of the officers' questions, showed them receipts for the batteries and photos of his daughter's bike with the batteries and showed them photos of his target shooting hobby.

51.     Plaintiff was directed to sit on the curb while they continued their investigation.

52.     Plaintiff advised the police that the report was discrimination and retaliation relating to his meeting the day before wherein Plaintiff had once again complained about the unlawful work environment.

53.     Upon information and belief, neither law enforcement nor Defendant searched the offices of any other physicians.

54.     About an hour later, the bomb squad confirmed that the package in question was indeed just batteries.

55.     Despite being exonerated for any wrongdoing whatsoever, Defendant immediately placed Plaintiff on administrative leave, banned him from his office and hospital, and threatened to charge Plaintiff with trespassing should he return.

56.     On September 3, 2024, Plaintiff again met with Defendant's Director of Medicine and Head of HR, after Plaintiff was scanned with metal detectors by a security guard prior to the meeting.

57.     At the September 3, 2024 meeting, Plaintiff again answered all of their questions about items found in his office.

58.     Defendant extended Plaintiff's administrative leave for another two weeks.

59.     On September 13, 2024, Plaintiff engaged in a telephone conference call with Defendant's Director of Medicine and Head of HR wherein they terminated Plaintiff's employment and alleged that Plaintiff had violated the hospital's policy regarding threats and workplace violence.

60.     The reasons given for Plaintiff's termination were and are pretextual and retaliatory.

61.    On September 23, 2024, Plaintiff filed a charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission.

62.    On October 3, 2024, the Equal Employment Opportunity Commission issued a Notice of Right to Sue to Plaintiff.

63.    This litigation is filed within ninety (90) days of Plaintiff's receipt of his right-to-sue letter.

**COUNT I**
**DISABILITY DISCRIMINATION**
**IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT, AS AMENDED**

64.    Plaintiff incorporates by reference all previous paragraphs.

65.    At all relevant times, Plaintiff was an individual with a disability within the meaning of the American With Disabilities Act, As Amended. Specifically, Plaintiff has a physical or mental impairment that substantially limits one or more of his major life activities, has a record of the impairment, and/or is regarded by Defendant has having the impairment.

66.    Defendant, through its employees, agents, and representatives, denied Plaintiff's request for reasonable accommodations.

67.    Defendant, through its employees, agents, and representatives, failed to engage in the interactive process in good faith.

68.    Defendant's decision to deny Plaintiff's requests for a reasonable accommodation due to his disability, constitutes discrimination against Plaintiff with respect to the terms, conditions, and/or privileges of employment in violation of the Americans With Disabilities Act.

69.    Defendant, through its employees, agents, and representatives, intentionally discriminated against Plaintiff in the terms and conditions of employment because he is an individual with a disability within the meaning of the American With Disabilities Act, As Amended.

70.    During Plaintiff's employment, Defendant, through its employees, agents, representatives, treated Plaintiff differently from similarly situated non-disabled employees in the terms and conditions of employment because he is an individual with a disability within the meaning of the American With Disabilities Act, As Amended.

71.    Defendant's decision to treat Plaintiff differently from similarly situated non-disabled employees because he has a record of an impairment constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the American With Disabilities Act, As Amended.

72.    Defendant's decision to treat Plaintiff differently from similarly situated non-disabled employees because Defendant regarded Plaintiff as disabled

constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the American With Disabilities Act, As Amended.

73. Defendant's decision to terminate Plaintiff because, in part, he has a record of an impairment constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the American With Disabilities Act, As Amended.

74. Defendant's decision to terminate Plaintiff because, in part, it regarded Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the American With Disabilities Act, As Amended.

75. The actions of Defendant and its agents, representatives, and employees were intentional in disregard to rights and sensibilities of Plaintiff.

76. As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT II**
**HOSTILE ENVIRONMENT DISABILITY HARASSMENT**
**IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT, AS AMENDED**

77.     Plaintiff incorporates by reference all previous paragraphs.

78.     During the course of his employment with Defendant, Plaintiff was subjected to unwelcome commentary and intimidation relative to his disabilities as described above in General Allegations.

79.     The unwelcome commentary and intimidation relative to his disabilities had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

80.     Defendant had both actual and constructive notice that its employees created a hostile and offensive work environment for Plaintiff.

81.     Despite having notice of the unwelcome commentary, intimidation and physical assault relative to Plaintiff's disabilities, Defendant failed to remediate.

82.     Defendant's conduct, by and through its employees, agents, and representatives, violated the Americans With Disabilities Act, As Amended.

83.     As a direct and proximate result of Defendant's wrongful acts and omissions, by and through its employees, agents, and representatives, Plaintiff has

sustained loss of earnings, earning capacity, and fringe benefits and has suffered

mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT III
## DISABILITY DISCRIMINATION
## IN VIOLATION OF
## THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

84.    Plaintiff incorporates by reference all previous paragraphs.

85.    At all relevant times, Plaintiff was an individual with a disability

within the meaning of the Persons With Disabilities Civil Rights Act.  Specifically,

Plaintiff has a physical or mental impairment that substantially limits one or more

of his major life activities, has a record of the impairment, and/or is regarded by

Defendant as having the impairment.

86.    Defendant, through its employees, agents, and representatives, denied

Plaintiff's request for reasonable accommodations.

87.    Defendant's decision to deny Plaintiff's requests for a reasonable

accommodation due to his disability, constitutes discrimination against Plaintiff

with respect to the terms, conditions, and/or privileges of employment in violation

of the Persons With Disabilities Civil Rights Act.

88.    Defendant, through its employees, agents, and representatives,

intentionally discriminated against Plaintiff in the terms and conditions of

employment because he is an individual with a disability within the meaning of the Persons With Disabilities Civil Rights Act.

89.     During Plaintiff's employment, Defendant, through its employees, agents, representatives, treated Plaintiff differently from similarly situated non-disabled employees in the terms and conditions of employment because he is an individual with a disability within the meaning of the Persons With Disabilities Civil Rights Act.

90.     Defendant's decision to treat Plaintiff differently from similarly situated non-disabled employees because he has a record of an impairment constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

91.     Defendant's decision to treat Plaintiff differently from similarly situated non-disabled employees because Defendant regarded Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

92.     Defendant's decision to terminate Plaintiff because, in part, he has a record of an impairment constitutes discrimination against Plaintiff in respect to the

terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

93.     Defendant's decision to terminate Plaintiff because, in part, it regarded Plaintiff as disabled constitutes discrimination against Plaintiff in respect to the terms, conditions and/or privileges of employment in violation of the Persons With Disabilities Civil Rights Act.

94.     The actions of Defendant and its agents, representatives, and employees were intentional in disregard to rights and sensibilities of Plaintiff.

95.     As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

**COUNT IV**
**HOSTILE ENVIRONMENT DISABILITY HARASSMENT**
**IN VIOLATION OF**
**THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT**

96.     Plaintiff incorporates by reference all previous paragraphs.

97.     During the course of his employment with Defendant, Plaintiff was subjected to unwelcome commentary and intimidation relative to his disabilities as described above in General Allegations.

98.    The unwelcome commentary and intimidation relative to his disabilities had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

99.    Defendant had both actual and constructive notice that its employees created a hostile and offensive work environment for Plaintiff.

100.   Despite having notice of the unwelcome commentary and intimidation relative to Plaintiff's disabilities, Defendant failed to remediate.

101.   Defendant's conduct, by and through its employees, agents, and representatives, violated the Persons With Disabilities Civil Rights Act.

102.   As a direct and proximate result of Defendant's wrongful acts and omissions, by and through its employees, agents, and representatives, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress,

**COUNT V**
**RETALIATION / RETALIATORY HARASSMENT**
**IN VIOLATION OF**
**THE AMERICANS WITH DISABILITIES ACT, AS AMENDED**

103.   Plaintiff incorporates by reference all previous paragraphs.

104.   After his complaints about the disability discrimination and harassment to which he was subjected, Plaintiff was subjected to retaliation and retaliatory

harassment including, but not limited to, administrative leave, termination of employment, and harmful accusations of wrongdoing, as described above in General Allegations.

105. This retaliation and retaliatory harassment occurred, in part, because Plaintiff engaged in protected activity pursuant to the Americans With Disabilities Act, As Amended.

106. Defendant's conduct, by and through its employees, agents and representatives, violated the Americans With Disabilities Act, As Amended.

107. As a direct and proximate result of Defendant's wrongful acts and omissions, by and through its employee, agents and representatives, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT VI
## RETALIATION / RETALIATORY HARASSMENT
## IN VIOLATION OF
## THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

108. Plaintiff incorporates by reference all previous paragraphs.

109. After his complaints about the disability discrimination and harassment to which he was subjected, Plaintiff was subjected to retaliation and retaliatory harassment including, but not limited to, administrative leave, termination of

employment, and harmful accusations of wrongdoing, as described above in General Allegations.

110.   This retaliation and retaliatory harassment occurred, in part, because Plaintiff engaged in protected activity pursuant to the Persons With Disabilities Civil Rights Act.

111.   Defendant's conduct, by and through its employees, agents and representatives, violated the Persons With Disabilities Civil Rights Act.

112.   As a direct and proximate result of Defendant's wrongful acts and omissions, by and through its employee, agents and representatives, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT VII
## INVASION OF PRIVACY – FALSE LIGHT

113.   Plaintiff incorporates by reference all previous paragraphs.

114.   Defendant disclosed to the general public and/or a large number of people information known to be false concerning Plaintiff.

115.   Defendant's allegations that Plaintiff is a threat or violated its workplace violence policy are patently untrue.

116.   Without conducting a thorough investigation, Defendant nonetheless prematurely, falsely, with malice and reckless indifference, issued public statements

accusing Plaintiff of being a threat and being guilty of committing violence in the workplace.

117.  Defendant's disclosure of the misleading information is highly objectionable to a reasonable person

118.  Defendant's untrue and misleading statements presented Plaintiff in a false light to patients, colleagues and the community.

119.  Defendant knew that the statements were false and misleading at the time the statements were made and/or published the remarks to third parties with knowledge of the falsity of the statements or reckless disregard of truth or falsity of the disclosed information and the false light in which Plaintiff would be placed.

120.  Defendant published the false and misleading statements with malice.

121.  Defendant made the statements in order to prejudice Plaintiff in the conduct of his employment duties and to deter others from working with him.

122.  Defendant also made the statements to deflect attention from their improper and discriminatory actions towards Plaintiff.

123.  As a result, Plaintiff and his wife immediately began to suffer from fear, harassment, anxiety and depression.

124.  Defendant's false statements resulted in serious damage to Plaintiff's reputation, well-being, and ability to ever work again

125.   As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

126.   Plaintiff incorporates by reference all previous paragraphs.

127.   Defendant's conduct as outlined above was intentional.

128.   Defendant's conduct as outlined above was extreme, outrageous, and of such character as not to be tolerated by a civilized society.

129.   Defendant's conduct resulted in severe and serious emotional distress.

130.   As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has suffered mental anguish, physical and emotional distress, humiliation and embarrassment.

WHEREFORE, Plaintiff Charles H. Christensen, D.O. prays that this Honorable Court grant the following remedies:

A.      Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of the Americans With Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq*., and the Persons With Disabilities Civil Rights Act, MCL § 37.1201 *et seq*., and Michigan common law.

B.      Award Plaintiff all lost wages and the value of fringe benefits, past and

future, to which he is entitled;

C.      Award Plaintiff compensatory damages;

D.      Award Plaintiff exemplary damages;

E.      Award Plaintiff punitive damages;

F.      Award Plaintiff reasonable attorney's fees, costs, and interest;

G.      Award Plaintiff such other relief as this Court deems just and proper.

*s/*Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel: (248) 763-6943
terigorman@aol.com

## **JURY DEMAND**

Plaintiff demands a jury trial.

*s/*Teresa J. Gorman
Teresa J. Gorman (P61001)
Teresa J. Gorman PLLC
Attorneys for Plaintiff
5700 Crooks Road, Suite 200
Troy, MI 48098
Tel: (248) 763-6943
Fax: (248) 689-3268
terigorman@aol.com
