Exhibit 1

RECEIVED

DEC 1 5 2015

HUMAN RESOURCES

## PHYSICIAN EMPLOYMENT AGREEMENT

This **PHYSICIAN EMPLOYMENT AGREEMENT** (the "**Employment Agreement**") is made this ⌐ᵗʰ day of December, 2015 (the "**Signing Date**") between **Huron Memorial Hospital** d/b/a Huron Medical Center, a Michigan non-profit corporation, and its affiliated corporations and entities, 1100 South Van Dyke Rd., Bad Axe, Michigan 48413 ("**HMC**") and **Charles Christensen, D.O.** (the "**Physician**"). This Employment Agreement shall be effective as of October 1, 2015 (the "**Effective Date**").

## RECITALS

**WHEREAS,** HMC is a non-profit Michigan corporation which operates an acute care hospital and physician practices and offers a variety of primary and specialty physician medical services.

**WHEREAS,** HMC desires to provide Pediatric services within its service area to meet community need and HMC's organizational mission to provide excellence in healthcare in a caring, compassionate manner in partnership with the communities it serves.

**WHEREAS,** Physician is licensed to practice medicine in the State of Michigan and is board certified in the medical specialty of Pediatrics.

**WHEREAS,** the Parties desire to enter into an employment agreement for the purpose of establishing the terms and conditions of Physician's employment with HMC.

**WHEREAS,** HMC and Physician desire to provide a full statement of their respective rights, obligations, and duties in connection with the provision of professional services by Physician.

**NOW, THEREFORE,** in consideration of the promises and the mutual covenants in this Employment Agreement, the Parties agree as follows:

1. **Definitions.**

    1.1. **Effective Date.** The term "Effective Date" is the date Physician will commence employment with HMC pursuant to the terms and conditions of the Employment Agreement. The Effective Date of this Agreement shall be October 1, 2015.

    1.2. **Employment Agreement.** The term "Employment Agreement" shall mean this agreement, inclusive of any and all exhibits attached thereto, between HMC and Physician, including all of its terms and conditions. The Employment Agreement supersedes and replaces any and all other agreements that may have existed between the Parties beginning with the Effective Date of this Employment Agreement.

    1.3. **Employment Term.** The term "Employment Term" shall mean the period of employment between HMC and Physician, including the Initial Employment Term and any Renewal Term or any subpart thereof.

MCL 0042

1.4. **Initial Employment Term**. The term "Initial Employment Term" means the period of employment between HMC and Physician beginning on the Effective Date and terminating on September 30, 2018.

1.5. **HMC Policies**. The term "HMC Policies" shall mean:

    1.5.1. Those HMC by-laws, rules, regulations, procedures, policies, and protocols (including those which govern HMC employees), presently in effect or as are from time to time adopted or instituted by HMC and/or hereafter from time to time formerly modified and/or amended; and

    1.5.2. The Medical Staff Bylaws and Rules and Regulations of the Medical Staff, presently in effect or as are from time to time adopted, amended, authorized, or approved by the medical staff and Board of Trustees of HMC.

1.6. **Party and/or Parties**. The term "Parties" means both HMC and Physician. The term "Party" means either HMC or Physician.

1.7. **Renewal Term**. The term "Renewal Term" means any term of employment between HMC and Physician under terms and conditions substantially equivalent to the terms and conditions set forth in this Employment Agreement commencing immediately after the end of the Initial Employment Term or a prior Renewal Term.

1.8. **Signing Date**. The term "Signing Date" is the date on which the Parties sign this Employment Agreement. As of the Signing Date, the Parties agree to be bound by the terms and conditions of this Employment Agreement beginning on the agreed upon Effective Date.

1.9. **Termination Condition**. The term "Termination Condition" means any of the circumstances set forth in Section 6 of this Employment Agreement, the occurrence of which during the Employment Term, creates in either Party the right to terminate this Employment Agreement as provided by the terms of this Employment Agreement without penalty or continuing obligation, except those obligations that survive termination of this Employment Agreement.

1.10. **Contract Year**. The term "Contract Year" shall mean any single year of the Employment Term beginning with the Effective Date and occurring in 365 day intervals thereafter.

2. **Offer and Acceptance.**

2.1. HMC hereby offers to employ Physician and Physician hereby accepts employment to serve as a physician in the professional practice of Pediatrics conducted by HMC on a Full-time, uninterrupted basis unless and until terminated as provided herein, subject to and in accordance with the terms and conditions set forth in this Employment Agreement. "Full-time" shall be defined as including Physician's obligation to work a minimum of forty (40) patient contact hours per week (2,080) hours during each

MCL 0043

Contract Year) while providing office/clinic outpatient care during regularly set office hours, inpatient care, and pediatric on-call coverage in a one-in-three on-call rotation. Physician's total expected work hours shall include paid time off ("PTO"), which shall accrue as per hospital personnel policies at the Level 4 rate which provides Physician with the opportunity to earn up to 264 hours annually based upon hours worked during each Contract Year. While Physician's primary practice site during the Employment Term will be at offices located at 1060 South Van Dyke Road, Ste. No. 400, Bad Axe, Michigan, Physician's office location may be changed by HMC to a location mutually agreeable to Physician and/or Physician may be assigned to staff outreach clinics within the HMC service area during the Employment Term.

2.2. Physician shall be a member of HMC's active medical staff, having achieved such status by application as provided in the HMC Medical Staff Bylaws. This Employment Agreement does not vest Physician with medical staff membership.

3. **Exclusive Agreement.**

3.1. Physician shall devote Physician's Full-time and best effort for HMC's benefit during the Employment Term of this Employment Agreement.

3.2. This Employment Agreement prohibits Physician from being involved financially or otherwise with any competing business organization without HMC's prior written consent during the Employment Term.

3.3. During the Employment Term, Physician shall not engage, directly or indirectly, in any other medical, clinical, research, or professional activities unless approved in writing by the Chief Executive Officer of HMC or except as set forth in **Exhibit A**.

Except as set forth in **Exhibit A** and as may otherwise be agreed to by HMC and Physician from time to time, all business Physician develops and secures during the Employment Term that involves the use of Physician's medical license shall be the property of HMC. To the extent that Physician engages in any of the permitted activities described in **Exhibit A,** Physician agrees that such activities will be conducted by Physician during those times when Physician is not expected to be performing those duties contemplated by this Employment Agreement.

4. **Obligations of Physician.**

4.1. **Physician's Duties.**

4.1.1. <u>General Duties.</u> Physician's principal duties are to provide medical care in Physician's specialty to patients of HMC in the outpatient office/clinic and inpatient care settings totalling a minimum of forty (40) patient contact hours per week. Physician agrees to establish regular office hours and to provide those services typical for the practice of Pediatrics. Physician shall be committed to developing and maintaining a high volume Pediatric medicine practice which incorporates best clinical and business practices, including, but

MCL 0044

not limited to, the provision of patient focused services, the practice of evidence based medicine, the establishment and maintenance of reliable and regular office hours, and the acceptance of same day and walk-in appointments during normal office hours.

4.1.2. <u>On-call Coverage</u>.  Physician shall assist in providing on-call coverage to HMC's Pediatric service, including hospital inpatients, out-patients, and emergency patients, as required by HMC pursuant to a one-in-three twenty four (24) hour per day (7:00 A.M. through 7:00 A.M.) on-call rotation schedule, including at least one (1) weekend per month, (i.e. 122 days per Contract Year) with the pediatric providers on HMC's medical staff. Physician's on-call requirement shall not prohibit Physician from trading on-call coverage days with other physicians in the on-call rotation who maintain privileges at HMC so long as such arrangements are made with reasonable advance notice to HMC and the covering physician.  In the event HMC requests and Physician agrees to cover more than Physician's required share of on-call days (i.e. more than 122 days per Contract Year) during the Employment Term ("Additional On-call Days"), HMC shall compensate Physician for such Additional On-call Days in the manner described in Section 6.2 and **Exhibit I** of this Employment Agreement.

4.1.3. <u>Acceptance of New Patients.</u>  Physician agrees to accept all new patients requesting Pediatric care services from Physician's practice, including new patients assigned to Physician by HMC or new patients acquired as a result of presenting to any HMC clinical service as a patient without a designated primary care provider.

4.1.4. <u>Compliance with Position Description.</u>  Physician shall abide by the general performance obligations as set forth in the Position Description attached as **Exhibit B**.

4.1.5. <u>Adherence to HMC Policies.</u>  Physician shall strictly adhere to HMC Policies (copies of all of which have been provided to or are available to Physician).

4.1.6. <u>Cooperation with Medical Staff Office.</u>  Physician shall cooperate with HMC's medical staff office by timely completing Physician's initial application and biannual application for renewal of Physician's medical staff privileges and timely submitting all necessary supporting documentation to the HMC credentialing department not more than thirty (30) days after Physician's receipt of the application or renewal application packet.

4.1.7. <u>Meet Organizational Citizenship Standards.</u>  Physician shall consistently meet HMC Citizenship expectations specifically described in attached **Exhibit C** during the Employment Term.

MCL 0045

4.1.8.   Cooperation in Use of the EMR.   Physician shall make consistent and routine use of the HMC Electronic Medical Record (EMR) as directed by HMC and meet EMR participation benchmarks for Pediatrics described in attached **Exhibit D**.

4.1.9.   Meet Organizational Quality Benchmarks.   Physician shall consistently achieve HMC quality benchmarks periodically published to Physician during the Employment Term. *Plus minly wRVU STATemans*

4.1.10.   Meet Organizational Productivity Expectations.   Physician shall achieve minimum productivity benchmarks as described in attached **Exhibit E** during the Employment Term.

4.1.11.   Advance Practice Professional Supervision.   Physician shall be responsible for collaboration with and/or the oversight and supervision of Advanced Practice Professional(s) (as may be required by law) involved in the delivery of clinical services as described in attached **Exhibit F**.   Physician shall record all time spent performing Advance Practice Professional Supervision on the Advance Practice Professional Physician Supervision Time Sheet attached as **Exhibit G**.   Such collaboration and/or supervision shall be in compliance with state and federal requirements, laws, rules and regulations, and Hospital policies, including that Physician shall, where required, enter into an appropriate written collaboration agreement(s) with the Advanced Practice Professional(s) being supervised.

4.2.   **Professional Conduct.**

4.2.1.   Physician shall exercise Physician's own professional judgment in the provision of patient care services.   HMC shall not have the right to direct Physician to take or omit any act which conflicts with such medical judgment in the care of the patient.

4.2.2.   Physician shall, at all times during the Employment Term, observe and conform to all laws and the American Medical Association's principles of medical ethics.

4.3.   **State Licensure.**   As an express condition of employment, Physician shall be and remain duly licensed by the State of Michigan to practice medicine without restriction. Physician shall provide proof of current licensure upon request of HMC.

4.4.   **DEA Registration**.   As an express condition of employment, Physician shall maintain registration with the Drug Enforcement Administration ("DEA") without any limitation on Physician's authority to prescribe drugs under such registration. Physician shall provide proof of current DEA registration upon request of HMC.

4.5.   **Medical Staff Membership.**   As an express condition of employment, Physician shall apply for, obtain and maintain medical staff membership in good standing at HMC.

MCL 0046

4.6. **HMO/PPO/IPA Memberships**. As an express condition of employment, Physician shall apply for and use Physician's best efforts to obtain and maintain membership in such health maintenance organizations, preferred provider organizations, and individual practice associations as HMC may designate from time to time.

4.7. **Medicare and Medicaid Certification**. As an express condition of employment, Physician shall maintain Medicare/Medicaid certification, and in the event Physician is excluded from, for any period of time, or is in any way sanctioned by the Medicare/Medicaid program, Physician shall immediately notify HMC. Physician shall also notify HMC within five (5) days of receipt of an initial sanction notice, notice of proposed sanction, the commencement of any investigation, or the filing of charges by a Medicare peer review or quality improvement organization, the Department of Health and Human Services, or any law enforcement agency or health regulatory agency of the United States or the State of Michigan. In the event Physician receives any initial sanction notice, notice of proposed sanction, or notice of any other sanction or investigation by any of the organizations, departments or agencies referred to herein, HMC may provide support (as determined by HMC) to assist Physician (as HMC deems appropriate) in responding to such notice or proceeding to maintain Physician's Medicare/Medicaid certification.

4.8. **Blue Cross Blue Shield and other Third Party Payer Eligibility.** As an express condition of employment, Physician shall maintain eligibility with Blue Cross Blue Shield of Michigan and all of the other third party payers with whom HMC participates. In the event Physician receives a sanction notice from, or is excluded from participation with, Blue Cross or any other third party payer with whom HMC participates, Physician shall immediately notify HMC of such circumstances.

4.9. **Board Certification.** Physician shall maintain board certification by the American Board of Pediatrics (ABP) during the Employment Term as an express condition of employment.

4.10. **Confidentiality.**

    4.10.1. Physician acknowledges that in the course of employment with HMC, Physician will regularly receive and assist in compiling valuable confidential information, professional secrets, and/or trade secrets relating to HMC's patients, employees, contracts, finances, business practices and plans, and the practices of its other health care professionals. Confidential Information includes information ordinarily known only to HMC personnel and information normally understood to be confidential or designated as such by HMC ("Confidential Information").

    4.10.2. Physician recognizes that all such Confidential Information is the property of HMC and that during and for two (2) years after the termination of this Employment Agreement, Physician will not use, disclose or reproduce Confidential Information under circumstances that could foreseeably result in

MCL 0047

the use of the Confidential Information in competition with HMC in any Michigan county where HMC operates a hospital, surgery center, clinic, or physician office on the date of termination of Physician's employment with HMC. The restrictions imposed by this Section do not apply to patient information disclosed in accord with the provisions of federal or state statutes and regulations or to Confidential Information that (a) is or becomes publically known through no wrongful act of Physician; (b) is rightfully received by Physician from a third party without restriction; (c) is independently developed by Physician without the use of any HMC resources; or (d) is furnished to a third party by HMC without a similar restriction on the third party's rights. The Parties agree that confidentiality relating to protected health information shall not be limited by Section 4.10.2 and shall meet the requirements set forth in Section 28 of the Employment Agreement.

4.10.3.   Physician's use of Confidential Information is not restricted for the purpose of fulfilling Physician's obligations under this Agreement or as otherwise directed by HMC.

4.10.4.   Except as otherwise provided by this Employment Agreement, Physician shall not have any rights to Confidential Information or to copies of Confidential Information.

4.10.5.   The obligations of confidentiality as set forth in this Section are intended to carry on beyond the term of this Employment Agreement for the period indicated above, irrespective of whether this Employment Agreement is terminated as provided herein or expires on its own terms.

4.10.6.   Physician agrees to comply with federal and state law and all HMC Policies relating to the handling and communication of Confidential Information.

4.11.   **Records.**  Physician shall be responsible for the timely and adequate completion of all medical records in compliance with HMC Policies, including completion of records of patients to whom care was provided by Physician and sufficient documentation of medical necessity for all services. Physician shall prepare and cause to be submitted to HMC on a timely basis a record of each patient encounter involving physician and every service provided by Physician as necessary for HMC billing, collection, management, and compensation purposes. Physician recognizes that all patient and business records are the property of HMC and that, during and after the Employment Term, Physician will not use or reproduce such records except for the purpose of fulfilling Physician's obligations under this Employment Agreement or as otherwise directed by HMC. Physician shall not have any rights to such records or to copies thereof except as may be required by law or by contract or except for the defense of any third party lawsuit.

4.11.1.   If Physician fails to timely complete all medical records in a manner consistent with HMC Policies, such failure may be treated as a material

MCL 0048

breach of this Employment Agreement if, after a written notification to Physician of the existence of such delinquency, the delinquent charting is not completed within seven (7) days of the date of notification.

4.12. **Referrals**. As and to the extent permitted by law, Physician, during the Employment Term, shall make all of Physician's referrals for all health care services and supplies, including, without limitation, physician services, hospital services (inpatient and outpatient), physical therapy, durable medical equipment, home care services, pharmaceuticals, and laboratory services, to entities owned or controlled by HMC; provided, however, Physician shall not be obligated to make a referral to a particular provider if:

   4.12.1.   The patient expresses a preference for a different provider, physician, or supplier;

   4.12.2.   The patient's insurer determines the provider, physician, or supplier which the patient might use; or

   4.12.3.   In Physician's judgment, a referral to a particular provider, entity, or supplier is not in the patient's best medical interests.

4.13. **Quality**. Physician agrees to reasonably cooperate in and support HMC initiatives and practices intended to aid in the achievement of applicable core measures established by the Joint Commission (JC), Centers for Medicare and Medicaid Services (CMS), Institute for Health Care Improvement (IHI), Centers for Disease Control and Prevention (CDC), American Hospital Association (AHA), American Academy of Pediatrics (AAP), American Board of Pediatrics (ABP), and any other healthcare quality improvement project, partnership, agency, or organization so selected by HMC which is relevant to the specialty of the Physician, as well as any internal quality improvement initiatives.

4.14. **Corporate Compliance**. Physician agrees to adhere to HMC's corporate compliance standards including, but not limited to, proper documentation for billing and reimbursement purposes.

4.15. **Fees and Billing**. In consultation with the Physician, HMC shall establish a written fee schedule and charges for all services Physician provides pursuant to this Employment Agreement. HMC may amend this fee schedule and charges at any time during the Employment Term. HMC or its appointed agent shall have the sole right to bill and collect from patients and third party payers (as applicable) for the clinical services Physician provides. HMC shall be entitled to retain all proceeds of professional and technical fee billing. Physician shall not bill separately for any such services.

   4.15.1.   At HMC's request, Physician shall execute and deliver agreements and other documents necessary for HMC to bill and be reimbursed directly for Physician's services under this Employment Agreement. Physician shall

MCL 0049

deliver to HMC or its designated or assigned agent any sums paid to Physician (by check, in cash, or otherwise) by any patient or third party payer (Blue Cross/Blue Shield of Michigan, Medicare, Medicaid, or otherwise) for services Physician provides under this Employment Agreement. Physician's obligations in this Section shall continue even after this Employment Agreement has terminated.

4.16. **Accountability**. Physician shall be accountable to the Quality Committee of the medical staff, the Medical Executive Committee, the President and CEO, and the HMC Board of Trustees for the quality of patient care rendered by Physician during the Employment Term in accordance applicable standards of care and HMC Policies. In all other matters, Physician shall be accountable to the Chief Executive Officer of HMC or his designee. Nothing in this Employment Agreement shall be construed to permit HMC to interfere with, direct, or restrict the Physician's independent exercise of medical judgment with respect to Physician's patients.

4.17. **Contracting**. Physician shall not enter into contracts binding upon HMC without HMC's advance written approval.

4.18. **Qualifications**. During this Employment Agreement, Physician shall: (i) maintain a permanent, unrestricted license to practice medicine in Michigan; (ii) be licensed and registered as necessary to dispense all narcotics and other drugs required to be dispensed in connection with the physician services provided under this Employment Agreement; (iii) be and remain board certified by the American Board of Pediatrics; (iv) maintain in good standing, without interruption, such medical staff membership and privileges at HMC necessary to be able to perform the services required; (v) participate in regular medical staff activities and responsibilities at HMC, including service on assigned medical and/or hospital committees and attendance at required meetings, as appropriate for Physician's status as Active Medical Staff; and (vi) participate fully with all third party payers which HMC accepts.

4.19. **Development of Evidenced Based Clinical Practice Protocols.** Physician shall work with HMC administration and the HMC Medical Staff to promote and implement protocols, pathways, and programming that prioritizes the use of evidence based clinical practices in all HMC operated pediatric outpatient, primary care medical practices during the Employment Term.

5. **Employment.**

5.1. **Employment Term.** Physician's Initial Employment Term (the "**Initial Employment Term**") shall commence on the Effective Date and terminate on September 30, 2018, subject to earlier termination provided in Section 7 below. Unless either Party shall provide written notice of non-renewal one hundred twenty (120) days prior to the expiration of the Initial Employment Term or any Renewal Term, this Employment Agreement shall automatically renew for Renewal Terms of one (1) year each for up to

MCL 0050

two (2) consecutive Renewal Terms following the expiration of the Initial Employment Term.

5.2. **Right to Renegotiate.** This Employment Agreement may be renegotiated after the Initial Employment Term at either Party's request ~~so long as the non-requesting Party consents.~~ *Error, To be striken From Contract*

5.3. **Conditions Precedent to Employment and Continued Employment.** This Employment Agreement shall commence and be effective on the Effective Date, provided, however, that Physician has and maintains the following as of the Effective Date:

   5.3.1.   A valid, unrestricted license to practice medicine in the State of Michigan;

   5.3.2.   A current, unlimited DEA registration;

   5.3.3.   Valid, current, unrestricted HMC active medical staff privileges and membership pursuant to Section 4.5;

   5.3.4.   Current HMO/PPO/IPA memberships as required under Section 4.6;

   5.3.5.   Insurance under HMC's professional liability insurance provider pursuant to a special endorsement adding Physician as an additional insured under the HMC policy of insurance;

   5.3.6.   Completion of all HMC requirements for employment as described in HMC employment policies and employee handbook; and

   5.3.7.   Board Certification by the American Board of Pediatrics.

In the event that any of the conditions precedent established under this Section are not met as of the Effective Date, HMC may elect, at its sole discretion, to delay the Effective Date to this Employment Agreement until all such requirements have been satisfied or withdraw its offer to employ Physician pursuant to this Employment Agreement. HMC shall not terminate the Employment Agreement under circumstances where a failure to satisfy the listed conditions precedent to employment are the result of delays caused by HMC.

6. **Compensation.**

   6.1. **Annual Salary Compensation.** HMC shall pay Physician "Annual Salary Compensation" during each Contract Year of the Employment Term in the amount described in attached **Exhibit H**. Physician's Annual Salary Compensation shall be payable in accordance with the normal payroll practices of HMC. In the event that Physician fails to achieve the specific performance benchmarks listed in this Section during a Contract Year, as measured at the end of each Contract Year, HMC reserves the right to reduce Physician's Annual Salary for the next Contract Year, non-renew the

MCL 0051

Employment Agreement at the end of the Initial Employment Term, or terminate the Employment Agreement as permitted under Section 6 as a result of Physician's failure to meet the following performance expectations:

6.1.1. <u>Board Certification.</u>   Physician shall maintain Board Certification by the American Board of Pediatrics during the Employment Term as required by Section 4.9 of this Employment Agreement.

6.1.2. <u>Citizenship.</u>   Physician shall meet the citizenship benchmarks described in Section 4.1.7 and attached **Exhibit C** during the Employment Term.

6.1.3. <u>Electronic Medical Record (EMR) Participation.</u>   Physician shall meet EMR participation benchmarks described in Section 4.1.8 and attached **Exhibit D**.

6.1.4. <u>Productivity.</u>   Physician shall meet the productivity minimum described in Section 4.1.10 and attached **Exhibit E**.

6.2. **Additional On-call Compensation.**   For each 24 hour on-call shift Physician works in addition to Physician's minimum on-call obligation as described in Section 4.1.2 of this Employment Agreement (i.e. Additional On-call Days), Physician shall be paid Additional On-call Compensation according to the compensation schedule set forth in attached **Exhibit I**.

6.3. **Productivity Bonus Compensation.**   HMC shall pay Physician "Productivity Bonus Compensation" during each Contract Year of the Employment Term in the amount and under the terms described in attached **Exhibit J**.

6.4. **Advance Practice Professional Supervision Compensation.**   HMC shall pay Physician "Advance Practice Professional Supervision Compensation" during each Contract Year of the Employment Term for providing collaboration and/or clinical oversight and supervision of Advanced Practice Professionals as described Section 4.1.11 and **Exhibit F** according to the compensation schedule described in attached **Exhibit K**.

6.5. **Continuing Medical Education, License Fees, Dues.**

6.5.1. HMC shall reimburse Physician for all reasonable, legitimate and documented business expenses incurred for attending professional CME conferences appropriate to Physician's specialty, in an amount not to exceed Four Thousand Dollars ($4,000) per Contract Year.

6.5.2. CME is based on each Contract Year and is not transferable to the following year.

6.5.3. Physician shall follow all applicable HMC Policies for timely submission of any and all legitimate business expenses, including conference fees and travel expenses, for which reimbursement is sought under this Section.

MCL 0052

6.3.4. HMC will also pay or reimburse Physician for license fees and medical staff dues up to One Thousand Five Hundred Dollars and 00/100 ($1,500.00) per Contract Year.

6.3.5. Pager and/or cell phone will be furnished to Physician by HMC.

6.6. **Professional Liability Insurance.** HMC will provide professional liability insurance to Physician pursuant to a modified claims made policy with minimum limits of $200,000 per claim/$600,000 aggregate and any excess policy in effect at such time. HMC may change the insurance plan, insurers, and/or policy limits and/or any excess insurance, including its limits, at any time as determined by HMC. Such insurance will cover Physician's services under this Employment Agreement. Any claim made or which should reasonably have been reported prior to the Effective Date and which arises from care rendered outside the scope of Physician's employment with HMC shall be the responsibility of Physician and not HMC. Physician shall bear all costs associated with the purchase of "tail" coverage to cover claims arising out of Physician's Practice prior to Physician's first date of employment with HMC. HMC shall maintain appropriate "tail" insurance coverage for Physician with the same coverage limits through its insurance plan in the event Physician's employment with HMC terminates for any reason.

6.6.1. HMC and Physician each agree to promptly notify the other of professional liability claims or incidents which may result in claims. Physician agrees to fully cooperate with HMC in investigating any such claim or incident. HMC shall have the right to settle any professional liability claim or suit following consultation with Physician without Physician's consent. HMC shall notify Physician of any settlements.

6.7. **Additional Benefits.** Physician shall be eligible to receive those "Additional Benefits" typically made available to full-time employees of HMC, which are described in attached **Exhibit L,** so long as such Additional Benefits are not duplicative of employee benefits otherwise already provided for in this Employment Agreement.

7. **Termination of Employment.** Notwithstanding that the Initial Employment Term has not commenced or that the Initial Employment Term or any Renewal Term, once commenced, has not expired, this Employment Agreement may be terminated in accordance with the following:

7.1. **Termination by Agreement.** In the event HMC and Physician shall mutually agree in writing, this Employment Agreement may be terminated on the date and on the terms stipulated between the Parties.

7.2. **Termination Without Cause.** Either Party may terminate this Employment Agreement at any time and for any reason by providing one hundred twenty (120) days prior written notice to the other Party. HMC, may, at its sole discretion, require Physician to continue to provide the services provided for under this Employment

MCL 0053

Agreement during the period of notice described in this Section, or any sub-set of the notice period, up until the stated termination date.  If HMC does not require Physician to continue to provide services during such period, HMC will continue to pay Physician's Annual Salary Compensation during such period, which will not be subject to any final reconciliation for any period of time during the notice period not actually worked.

7.3.  **Termination for Specific Breaches.**  The Employment Agreement may be terminated immediately without prior notice at the option of HMC, by service of written notification of the termination to  Physician, in the event any of the following specific breaches occur:  (i) Physician is determined to have committed gross misconduct of either a professional or personal nature; (ii) Physician's medical staff privileges or membership are suspended, restricted, reduced or revoked; (iii) Physician's right to practice medicine in the State of Michigan is either suspended, limited, or revoked; (iv) Physician is convicted of a crime punishable by incarceration longer than one year or any crime, whether a felony or misdemeanor, described in MCL § 333.20173a; (v) Physician is excluded from participation in Medicare and/or Medicaid, Blue Cross/Blue Shield of Michigan, or any other third party payer or health plan designated by HMC; (vi) Physician has a guardian of the person or conservator of the estate appointed by a court of competent jurisdiction; (vii) Physician fails to perform any service required by this Employment Agreement and in accordance with HMC's standards for quality of care, thereby causing harm  and/or imminent danger to patients; (viii) Physician fails to continuously maintain the board certification required under this Employment Agreement; and/or (ix) Physician violates HMC's Policies after being given notice of a failure to comply and a reasonable opportunity to correct such failure.

7.4.  **Termination Due to Legislative Changes.**  In the event there shall be change in the Social Security Act, Medicare or Medicaid Acts, Regulations, or in the official interpretation thereof, or if new legislation is adopted, or if a change occurs in any other third-party payer reimbursement system, any of which materially affects the reimbursement which HMC may receive for services rendered by Physician to patients under this Employment Agreement, either Party may by written notice propose a new basis for compensation for the services furnished pursuant to this Employment Agreement.  If notice of a proposed new basis is given, and if HMC and the Physician acting in good faith are unable, within thirty (30) days thereafter, to agree upon a basis for compensation, either Party may terminate this Employment Agreement on a date specified in a written notice of termination to the other Party, provided said date shall not be sooner than thirty (30) days from the date such notice of termination is given.

7.5.  **Termination Due to Actual or Threatened Actions.**  If Physician or HMC shall receive notice of an actual or threatened decision, finding or action, collectively referred to herein as "action" by any governmental or private agency, court or other third party which, if or when implemented, would have the effect of (i) making the business of HMC or Physician economically unfeasible, (ii) revoking or jeopardizing the certification of HMC, (iii) prohibiting referrals to patients to HMC for health care related services, (iv) prohibiting HMC from billing for medical services provided by

MCL 0054

HMC or Physician; and/or (v) subjecting HMC, Physician, its governing body, or employees to civil or criminal prosecution, or other adverse proceedings on the basis of their participation herein, or HMC or Physician receive a written legal opinion from attorneys with recognized expertise in health law representing either Party that the Employment Agreement, or any provision thereof, may violate The Physician Self-Referral Law, 42 USC § 1395nn, and accompanying regulations (Stark law), 42 USC § 1320a-7b and accompanying regulations (Anti-Kickback law), and/or 26 USC § 501(c)(3) and accompanying regulations (tax-exempt status and prohibition against private inurement), HMC and Physician shall attempt to amend this agreement in order to avoid the action or threatened action. If the Parties hereto, acting in good faith, are unable to amend this Employment Agreement to meet the requirements of the agency, court, or third party in question or, alternatively, if HMC or Physician determines, in good faith, that compliance with such requirements is impossible or unfeasible, this Employment Agreement shall be terminated after thirty (30) days' advance notice of Termination is provided in writing to the other Party.

7.6. **Additional Grounds for Termination.** This Employment Agreement may also be terminated with thirty (30) days' written notice if Physician suffers any of the following events: (i) Physician is disabled to the extent Physician is unable to perform the duties required by this Employment Agreement for one hundred and eighty (180) days from the onset of such disability; (ii) Physician dies during the Term of this Employment Agreement; and/or (iii) Physician is incapacitated for a period exceeding one hundred eighty (180) continuous days.

7.7. **Effects of Termination.** Upon termination of this Employment Agreement, as hereinafter provided, the Parties shall have no further obligation hereunder, except for (i) obligations occurring prior to the date of termination, and (ii) obligations, promises, or covenants contained herein which are expressly made to extend beyond the Employment Term, including, without limitation, the obligations arising under Section 4.10 (Confidential Information) and Section 28 (HIPAA Compliance).

7.8. **Duties Upon Termination.** Physician shall, upon Employment Agreement termination, return to HMC all HMC's records of any sort, including patient medical records, and all literature, supplies, letters, written or printed forms, and/or memoranda pertaining to HMC's business within forty-eight (48) hours of such termination and without HMC demand. Physician shall complete all outstanding medical records within forty-eight (48) hours of such termination, without HMC demand, and in compliance with the HMC Policies. HMC, upon Employment Agreement termination, shall pay to Physician all compensation due Physician through the date of termination and shall pay such additional amounts due to Physician determined to be due pursuant to Section 6 within sixty (60) days following the effective date of termination of Physician's employment. In addition, Physician and HMC shall have a continuing obligation to cooperate with one another with respect to malpractice and other litigation regarding the services provided pursuant to this Employment Agreement, and Physician shall have a continuing duty to complete any outstanding medical records.

MCL 0055

7.9. **Proration of Earned Monies.**   Upon termination of employment by HMC or Physician, all monies earned under this Agreement, but not yet paid, shall be prorated until the date of termination.

8. **Covenant Not To Compete and Not to Solicit.**

8.1. Physician recognizes that HMC has invested, and is investing, time, effort and funds in helping Physician develop a medical practice and that HMC would incur significant damage if Physician were allowed to compete with HMC after receiving its assistance and before HMC has a reasonable opportunity to help another physician develop a similar practice.   Therefore, Physician agrees that, upon termination of Physician's employment with HMC for any reason, and for a period of one  (1) year thereafter, Physician shall not:

8.1.1. Provide any medical care in Physician's specialty (Pediatrics), whether by appointment, consultation request, on-call status, or on a walk-in or an urgent care basis without an appointment, within the HMC Service Area, within a zip code area contiguous to the defined Service Area or within a zip code area where HMC operates a Primary Care Office or Outpatient Clinic (the "Excluded Area"). The HMC Excluded Area is defined in **Exhibit M**.

8.1.2. Solicit any patient treated by Physician as an employee of HMC within the period of twelve (12) months immediately prior to the termination of Physician's employment with HMC.

8.1.3. Solicit any employee of HMC who worked with and who was supervised or had significant work contact with Physician during the eighteen (18) month period prior to termination of employment to work with or for another medical clinic, physician's office, hospital or health care entity providing or attempting to provide health care services within the Excluded Area defined in **Exhibit M.**  HMC acknowledges that general postings of employment positions will not constitute a violation of this Section 8.1.3.

8.2. Nothing in  this Section shall preclude Physician from providing medical care or other professional services or consultation on a charity, non-billable or other non-income producing basis and for which Physician is paid no salary or other compensation, or in an emergency situation other than the regular course of practice in a hospital emergency room.

8.3. The restrictive covenants barring competition with HMC and/or its employed physicians contained in Section 8 shall not apply under circumstances where Physician returns to local private practice in the HMC Excluded Area with a principal place of business located in Bad Axe, Michigan, and Physician is not an employee of a hospital, hospital system, or PHO, or an employee of an affiliate of a hospital, hospital system, or PHO, and that one or more of the following circumstances also exist:

MCL 0056

8.3.1.   HMC or Physician initiates termination of the Employment Agreement without cause, or

8.3.2.   Physician initiates termination based on HMC's uncured breach of a material provision of the Employment Agreement.

8.4.   In the event that HMC ceases to operate as an acute care hospital or is acquired or integrates into another hospital or health system, the covenants contained in Section 8 of the Employment Agreement shall not be enforceable against Physician.

8.5.   Exceptions to the requirements of Section 8 may only be granted by the HMC Board of Trustees following a written recommendation by the CEO of HMC.

9. **Severability**.  In the event any Employment Agreement clause or provision shall be held to be invalid or unenforceable, the same shall not affect the validity or enforceability of any other provision in the Employment Agreement, and this Employment Agreement shall remain in full force and effect in all other respects.   If a claim of invalidity or unenforceability of any Employment Agreement provision is predicated upon the length of the term of any covenant or the area covered thereby, such provision shall not be deemed to be invalid or unenforceable; rather, such provision shall be deemed to be modified to the maximum area or the maximum duration as any court of competent jurisdiction shall deem reasonable, valid, and enforceable.

10. **Facilities, Equipment, Supplies and Support Personnel**.  HMC shall provide or arrange for all office facilities, equipment, supplies and support personnel reasonably required to provide services under this Employment Agreement.   Physician shall not engage in any direct purchasing or otherwise contract any liability on behalf of HMC.  The purchase of any equipment and/or supplies must be approved by HMC in writing prior to any purchase, lease, or acquisition by any other means.  All equipment and/or devices provided to Physician or otherwise authorized under this Section remain the property of HMC and must be returned to HMC in working order by Physician at the end of the Initial Employment Term or any Renewal Term. *Dictation to be provided.*

11. **Quality of Services**.  All of Physician's services pursuant to this Employment Agreement shall conform to:  (i) all applicable federal, state, and local governmental laws, rules and regulations; (ii) HMC Policies; (iii) all recognized external accrediting organizations selected by HMC; (iv) all standards of ethics established by the American Medical Association; and (v) all applicable third party payer standards established for all payers with which HMC participates.

12. **Benefit**.  This Employment Agreement shall be binding upon and operate for the benefit of the Parties and their respective heirs, representatives, successors and assigns.

13. **Amendment**.   The Employment Agreement may be amended at any time by mutual agreement of the Parties, provided that before any amendment shall be operative or valid, it shall be reduced to writing and signed by both Parties.

MCL 0057

14. **Entire Agreement.** The Parties understand and agree that this Employment Agreement is the entire agreement between the Parties regarding the terms and conditions of Physician's employment with HMC. The Employment Agreement terms may not be varied, modified, supplemented or in any other way changed by extraneous verbal or written representations by HMC or its agents to Physician.

15. **Governing Law; Venue.** This Employment Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Michigan. The circuit court for the County of Huron, State of Michigan, shall be deemed the court of convenient and proper venue.

16. **Survival.** The Covenants of Sections 4.10, 4.15.1, 7.8, 8, 22, 23, and 28 shall survive the termination of this Employment Agreement.

17. **Notice.** Any notice or other communication required or permitted under this Employment Agreement shall be provided to the following Parties at the following locations, and shall be sufficiently given if in writing and delivered personally or sent by telex, telecopy or otherwise transmitted (with request for assurance in a manner typical with respective communications of that type), registered or certified mail (postage prepaid with return receipt requested):

**HMC: HURON MEDICAL CENTER**              **PHYSICIAN:**
Office of the CEO
Jeff Longbrake, President and CEO          Charles Christensen, D.O.
1100 S. Van Dyke                          3697 Port Austin Rd.
Bad Axe, MI 48413                         Port Austin, MI 48467

17.1. The Parties may change the address for notices, payments or statements by giving written notice of such address change in the manner described herein. Notices shall be deemed received: (i) on the date delivered, if delivered personally or by wire transmission; (ii) on the next business day after deposit with an overnight courier; or (ii) three (3) business days after being sent by registered or certified mail.

18. **Force Majeure.** Neither Party shall be liable to the other for any loss of business or any other damages caused by an interruption of this Employment Agreement, when such interruption is due to: war, rebellion or insurrection; an act of God, fires, government statute or regulation prohibiting the performance of this Employment Agreement, strikes, labor stoppages, lockouts or labor disputes to the extent such occurrences are not caused by the actions of the Parties seeking relief under this Section, or any other causes beyond the reasonable control or anticipation of HMC or Physician.

19. **Interpretation.** As used in this Employment Agreement, the masculine, feminine or neuter gender, and the singular and plural number, shall be deemed to include the others whenever the context so indicates. This Employment Agreement shall be construed as a whole in accordance with its fair meaning. This Employment Agreement shall not be construed

MCL 0058

against the Party because that Party or that Party's legal representation drafted this Employment Agreement or any provision or portion of it.

20. **Section Headings.** The section headings of this Employment Agreement are for the convenience of the Parties only. They in no way alter, modify, amend, limit or restrict contractual obligations of the Parties.

21. **Third Parties.** This Employment Agreement shall be enforceable only by the Parties and their successors in interest by virtue of an assignment, which is not prohibited under the Employment Agreement terms, and no other person shall have the right to enforce any of the provisions contained herein.

22. **Indemnification.** To the extent not already provided for, the Parties hereby mutually agree to indemnify and hold the other harmless against any damage or injury to property or person caused by the Party's breach of any representation, warranty, or obligation as herein provided, and such indemnity shall include an obligation to pay all costs, reasonable attorney fees or other expenses incurred by the other in connection therewith. Neither Party will have any obligation under this Section to indemnify the other for any third party claims alleging professional liability, and neither Party will have any obligation to indemnify the other under this section to the extent of any insurance proceeds received by the other Party for such damage or injury.

23. **Federal Government Access.** In the event that the Secretary of Health and Human Services or the Comptroller General of the United States or their representatives determine that this Employment Agreement is a contract described in Section 1861(v)(1)(I) of the Social Security Act, Physician agrees that until the expiration of four (4) years after the furnishing of services, Physician shall make available, upon written request to HMC by the Secretary of Health and Human Services, or upon request of the Comptroller General, this Employment Agreement, and books, documents, and records that are necessary to certify the nature and extent of costs HMC paid pursuant to this Employment Agreement.

24. **Assignment.** Neither Party shall be permitted to assign their respective rights and obligations to any other person or corporation without the consent of the other Party, confirmed in writing by both Parties to this Employment Agreement.

25. **Compliance with Laws, Rules and Regulations.** The Parties acknowledge that this Employment Agreement is subject to, and agree to comply with, applicable local, state, and federal statutes, rules, and regulations. Any such provisions that currently or in the future invalidate any Employment Agreement term, that are inconsistent with any Employment Agreement term, or that would cause one or both of the Parties to be in violation of law while performing this Employment Agreement, shall be deemed to have superseded the Employment Agreement terms. The Parties shall use their best efforts to accommodate the Employment Agreement terms and intent consistent with applicable statutes, rules, and regulations.

MCL 0059

26. **Annual Mandatory Training**.  Physician shall complete all annual mandatory training requirements as set by HMC.

27. **Representations**.  Physician represents and warrants that Physician is in full compliance with all applicable laws, including licensing laws, and in good standing under the Federal Medicare and/or state Medicaid programs.  Physician shall promptly notify HMC of any action to suspend, revoke, or restrict Physician's license or Federal Medicare and/or state Medicaid program good standing status.  If the Federal Medicare and/or state Medicaid program sanctions Physician, Physician may be terminated immediately.

28. **HIPAA Compliance**.  To the extent a Party provides to the other any information regarding or pertaining to its patients or to the extent a Party receives information about a patient of the other as an incidental or accidental consequence of the Parties fulfilling their respective obligations under this Employment Agreement, and in accordance with and pursuant to federal and state laws and regulations, including the Administrative Simplification provisions of the Health Insurance Portability and Accountability Act of 1996, 45 CFR Part 160 and 164, providing for the protection of patient health information, the Parties hereby agree to appropriately use and safeguard patient health information provided or disclosed to each other and to keep such information in strictest confidence in order to protect the privacy of all patients, to the extent required by law.  Physician agrees to abide by all HMC Policies related to privacy and security of protected health information.

29. **Final Approval**.  The execution of this Agreement is contingent upon final legal review and the approval of the Huron Memorial Hospital Board of Trustees or a duly appointed subcommittee thereof.  The Parties agree that once this Agreement has been signed by the Parties, all necessary approvals have been obtained to make this a final binding agreement between the Parties.

**IN WITNESS WHEREOF**, the Parties have executed this Employment Agreement on the date set below their respective names.

MCL 0060

**HURON MEDICAL CENTER:**                    **PHYSICIAN:**

By: _____              By: _____

Printed Name:  Jeffery Longbrake            Printed Name:   Charles Christensen, D.O..

Its:      President and Chief Executive Officer

Date: December  9 , 2015                     Date:  December  4  , 2015

MCL 0061