Exhibit 2

ORIGINAL

## PHYSICIAN EMPLOYMENT AGREEMENT

This Employment Agreement ("Agreement") is effective on the Effective Date (as defined in Subsection 5.01) between McLaren Medical Group, a Michigan nonprofit corporation ("MMG"), and **CHARLES CHRISTENSEN, D.O.** (the "Physician"). Unless otherwise provided, all defined terms in the Agreement referenced in an Exhibit shall have the meanings prescribed in this Agreement.

### BACKGROUND

A. MMG is a subsidiary of McLaren Health Care Corporation (the "Corporation"), an integrated health delivery system, and owns and operates various ambulatory care facilities, services and programs.

B. The Physician is licensed to practice medicine in the State of Michigan and is board certified in Pediatrics.

C. MMG desires to employ the Physician to conduct a Pediatrics medical practice located at 1060 South Van Dyke Road, Suite 300, Bad Axe, Michigan, 48413, or at a subsequent location as may be determined by MMG (the "Practice").

D. The Physician desires to be employed by MMG to conduct the Practice according to the terms and conditions of this Agreement and to become a member of the Medical or Professional Staff of McLaren Thumb Region (the "Medical Center(s)").

THEREFORE, the parties agree as follows:

1. **EMPLOYMENT AND DUTIES**

   1.01 During the term of this Agreement and in accordance with the terms and conditions set forth herein, MMG employs the Physician, and the Physician accepts employment from MMG, to conduct the Practice on the basis of 1.0 full time equivalent (FTE) units, which equals 40 hours per week. Physician will be responsible to the President and Chief Executive Officer of MMG or their designee for all matters pertaining to the Practice.

   1.02 During the term of this Agreement, the Physician agrees to conduct the Practice and provide the services described in Exhibit A, attached.

   1.03 All services provided by the Physician pursuant to this Agreement will conform to:

   (a) All applicable federal, state and local governmental laws, rules, and regulations, as well as all licensure requirements;

   (b) All applicable standards of certifying or accrediting agencies from which MMG has secured certification or accreditation;

   (c) All applicable standards established from time to time by third-party payors, including, but not limited to, Blue Cross and Blue Shield of Michigan, Medicare, and Medicaid;

1

07/22/21

    (d)    All applicable standards, rules and regulations regarding confidentiality of patient and/or MMG records; and

    (e)    All applicable quality assurance and utilization review programs required by MMG and all relevant regulating agencies, including, without limitation, the Michigan Peer Review Organization and the Centers for Medicare and Medicaid Services.

1.04    All services provided by the Physician pursuant to this Agreement will be performed by the Physician in a competent, courteous and professional manner.

1.05    The Physician will be required to abide by all applicable rules, regulations, and policies of MMG, including without limitation the personnel policies and procedures, as the same are in effect from time to time. The Physician has access to such policies at the Practice and is expected to familiarize themselves with such policies.

1.06    If not currently employed by MMG, the Physician will be required to undergo a physical and a test for use of controlled substances prior to employment. In addition, the Physician may be required to undergo a test for use of controlled substances during the term of this Agreement, if the Physician is suspected of being under the influence of a controlled substance. The cost of such physical and drug tests will be paid by MMG.

1.07    The Physician will prepare such records, charts, reports, and forms documenting the services provided by the Physician under this Agreement the same day the patient is seen as may be reasonably required by MMG. The Physician shall include the time and date of each entry the Physician makes in any patient record and shall sign each entry. All such records will be and remains the property of MMG and will not be disclosed by the Physician to any person other than MMG employees, except as required by law. Any change or modification of patient records will be mutually agreed upon by MMG and the Physician.

## 2. COMPENSATION

2.01    As the total compensation to be received by the Physician for all services provided under this Agreement, MMG will pay or provide (subject to appropriate tax and payroll withholdings) the compensation and benefits described below in this Section 2. MMG will provide the Physician or their designated representative with reasonable access to the Practice's books, records, and supporting data used by MMG to calculate the compensation payable to the Physician.

2.02    Each Contract Year (defined below), the Physician shall be entitled to $220,000, payable in equal biweekly installments ("Salary Installments").

"Contract Year" shall mean each consecutive 12-month period beginning on the Effective Date of this Agreement. The Physician's guarantee compensation is not to exceed the 90th percentile as measured by the Detailed Market Survey Data (DMSD). Salary Installments include any biweekly payments made to the Physician for paid time off.

2.03    MMG will provide the following benefits during the term of this Agreement:

    (a)    An annual allowance in accordance with Exhibit B; and

07/22/21

MCL 0006

(b)   The other usual benefits afforded to MMG's physician-employees generally, as may be in effect from time to time. The current benefits are set forth on the attached Exhibit C. Nothing contained in this Agreement will be interpreted to require MMG to maintain the current level of physician-employee benefits throughout the term of this Agreement; however, MMG will not reduce the level of the Physician's benefits except as part of an overall modification or reduction of benefits provided to all of its similarly-situated physician-employees.

**3.   BILLING AND COLLECTION**

3.01   All services provided by the Physician pursuant to this Agreement will be billed by MMG in a manner consistent with MMG practices and the billing system utilized by MMG. MMG or its authorized agent will have the sole and exclusive right to invoice and collect all charges for services rendered by the Physician under this Agreement. Unless otherwise directed by MMG, the Physician will not directly bill patients or third-party payors for any services provided under this Agreement.

3.02   The Physician hereby assigns their third-party billing (P.I.N.) numbers to MMG to enable MMG or its authorized agent to bill and collect all appropriate charges as a result of the Physician's services provided under this Agreement. The Physician also assigns to MMG their right to receive payment from third-party payors for such services.

3.03   All compensation paid to the Physician, including without limitation reimbursement from patients, third-party payors, or other sources, for the services rendered by the Physician pursuant to this Agreement shall be paid or endorsed over and belong to MMG.

3.04   The Physician will accept payment as a participant in the Blue Cross and Blue Shield of Michigan, Medicare, and Medicaid third-party payor programs, and as a participant in any managed care, alternative health care delivery or direct contracting programs in which MMG participates. The Physician will promptly complete at the request of MMG all applications and forms to ensure the Physician's participation in any managed care, alternative health care delivery or direct contracting programs. Participation in any managed care, alternative health care delivery or direct contracting programs is at the discretion of MMG.

**4.   SPACE, EQUIPMENT, AND STAFF**

4.01   MMG will, consistent with general MMG policies and subject to available resources, provide such office space, utilities, equipment, staff and supplies as are necessary and appropriate for the proper operation and function of the Practice.

4.02   The Physician will not increase or decrease the size of the staff of the Practice or change the level of compensation of the staff of the Practice, without the prior written consent of MMG.

**5.   TERM AND TERMINATION**

5.01   The term of this Agreement shall commence on the latest of the following dates ("Effective Date"):

(a)   August 1, 2021;

3

07/22/21

MCL 0007

(b)     The date the Physician becomes a member of the Medical Staff at the Medical Center;

(c)     The date the Physician is granted clinical privileges by MMG;

(d)     The date MMG receives satisfactory results from the investigative consumer report, regarding the Physician's background, which the Physician authorized.

<u>5.02</u>     The term of this Agreement shall expire on July 31, 2023.

<u>5.03</u>     This Agreement may be terminated and canceled, at any time, as follows:

(a)     By written consent of the parties;

(b)     By either party, for any or no reason, upon 60 days' prior written notice;

(c)     By either party, effective 30 days after written notice is given by a party ("Notifying Party") to the other party ("Notified Party") of the occurrence or continuance of any act or omission which constitutes a failure to perform any obligation of this Agreement by the Notified Party ("Breach"). In the event such Breach is remedied by the Notified Party within such 30-day period, such termination notice shall be null and void. However, if the Breach is not capable of cure, termination will be effective immediately upon the giving of notice by the Notifying Party, unless otherwise provided by the Notifying Party;

(d)     By MMG immediately upon the death or determination of disability of the Physician (which shall mean the Physician's inability to fully perform the services required under this Agreement for more than three consecutive months);

(e)     By MMG upon 30 days' prior written notice to the Physician in the event it determines in good faith that the quality of medicine practiced by the Physician unreasonably exposes MMG to malpractice liability;

(f)     By MMG immediately upon the Physician being formally charged with any crime punishable as a felony, or any crime related to medical practice, or any crime punishable as a misdemeanor involving moral turpitude, immoral conduct, or associated with use of controlled substances;

(g)     By MMG immediately upon (i) discovery that the physician is misusing any controlled substance, and (ii) the failure of the physician to seek assistance from the Michigan Health Professional Recovery Program within seven (7) days of being requested by MMG to do so. Such a request by MMG may be verbal and/or by telephone. As used in this paragraph, the discovery that the Physician is misusing a controlled substance may be made through testing of the Physician or through any other means. The "misuse" of a controlled substance need not be in the form of dependence by the Physician and need not affect the Physician's performance of services under this Agreement;

(h)     By MMG immediately upon discovery that the Physician has engaged in unauthorized appropriation from MMG of drugs. As used in this paragraph, the

4

07/22/21

MCL 0008

discovery that the Physician engaged in such unauthorized appropriation of drugs may be made through any means;

(i) By MMG immediately upon the reduction, termination or suspension of the Medical or Professional Staff membership or clinical privileges of the Physician at the Medical Center(s);

(j) By MMG immediately upon the Physician's suspension or exclusion from the Medicare or Medicaid programs or the occurrence of any event or condition which prohibits MMG from billing for the Physician's services or accepting assignment of the Physician's right to receive payment from third-party payors pursuant to Subsection 3.02 above; or

(k) By MMG immediately upon the Physician's loss of a good and valid license to practice medicine in the State of Michigan, controlled substance license from the State of Michigan or controlled substance registration certificate from the Drug Enforcement Administration.

5.04  The compensation payable to the Physician for the services provided by the Physician under this Agreement will accrue pro rata over the term of this Agreement. All non-accrued compensation will cease on the day of the termination of this Agreement.

5.05  On the expiration or earlier termination of this Agreement, the Physician shall deliver all records, files, documents, and other tangible things containing any Confidential Information (as defined in Section 10 hereof) to MMG without making or retaining copies or notes of such Confidential Information. Upon the expiration or earlier termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for (a) rights and obligations accrued as of the termination, (b) rights and obligations arising out of events occurring prior to the termination, and (c) rights and obligations under Sections 7 and 10.

5.06  In the event the Physician continues, with the consent of MMG, to render services after the termination date of this Agreement, the Physician shall do so on a month-to-month basis with either party having the right to terminate this Agreement at the end of any month on at least 30 days' written notice, and all of the other terms and conditions of this Agreement shall remain in full force and effect; provided, however, the Physician shall not accrue paid time off or be eligible to utilize the Annual Professional Allowance account benefit during such month-to-month employment. Upon execution of a new agreement, full benefits will be reinstated.

5.07  Upon expiration or termination of this Agreement, the Medical Staff membership and clinical privileges of the Physician shall automatically terminate effective on the date of expiration or termination, unless MMG elects otherwise in its sole discretion. Such automatic termination shall be administrative in nature and shall not be reportable under either the Health Care Quality Improvement Act or the Michigan Public Health Code, unless otherwise determined by MMG. The Physician shall not be entitled to any hearing or appeal procedure relating to termination of Medical Staff membership or clinical privileges contained in the bylaws, rules, or regulations of the Medical Center or its Medical Staff.

5

07/22/21

MCL 0009

6.  **PROFESSIONAL LIABILITY INSURANCE**

During the term of this Agreement, MMG will provide professional liability insurance for the Physician for the professional services rendered by the Physician under this Agreement. Such insurance will be a minimum of $1,000,000 per claim and $3,000,000 annual aggregate. The insurance coverage will include tail coverage.

7.  **OUTSIDE PRACTICE OR ACTIVITIES**

7.01   The Physician acknowledges and agrees: (a) the Physician's employment by MMG exposes the Physician to patients of MMG, patients of other physicians employed by MMG, MMG's managed care provider agreements and enrollees under such provider agreements, and MMG's case management protocols and quality improvement and risk management processes, all of which are proprietary and valuable to MMG; (b) MMG has made and will continue to make a substantial investment in developing the trust and confidence of its patients and their allegiance to MMG and the physicians associated with MMG; (c) the Physician's best efforts are vital to the success of the Practice and MMG's Pediatrics program; and (d) if the Physician were to leave the employment of MMG and establish a medical practice or join a health care entity which competes with MMG, the Physician's departure would jeopardize MMG's legitimate professional and business interests.

7.02   The Physician will not participate or engage in, directly or indirectly, any other medical practice, clinical research, or professional activity or business of any kind without prior written consent from MMG. Examples include: participating in a research project not under the jurisdiction of a Corporation institutional review board, or an ownership interest in an entity to which the Physician may refer or order health care-related goods or services. The Physician shall complete a questionnaire concerning outside activities upon request of MMG.

7.03   The Physician also agrees that upon the expiration or earlier termination of this Agreement, the Physician shall not practice medicine in any form or capacity, at any location within a radius of 10 miles of the Practice (all locations, if there is more than one) for a period of one (1) year. The Physician further agrees that if the Physician's employment ends for any reason or in any manner, whether or not the Physician practices within the geographic area described in the preceding sentence, the Physician will not, either before or for a period of one (1) year immediately following the end of the Physician's employment: (a) solicit for treatment any former or existing patient (or member of any patient's household) of the Practice; (b) induce or attempt to influence any employee or patient of the Practice to terminate their relationship with the Practice; or (c) induce or attempt to influence any hospital, other health care facility and physician or any other professional with a referring relationship with the Practice to terminate that relationship; or (d) solicit any patient service contractual arrangements of the Practice or the Medical Center(s) (for example, an on-call agreement).

7.04   The Physician acknowledges the restrictions contained in this Section 7 are reasonable and necessary to protect the legitimate professional and business interests of MMG, and that any violation of these restrictions would result in irreparable loss and injury to MMG. The Physician therefore agrees that in addition to any other remedies available to it, MMG shall be entitled to immediate preliminary and injunctive relief in the event of a violation of the

6                                                            07/22/21

MCL 0010

restrictions contained in this Section 7 without the necessity of MMG proving actual damages. The Physician further agrees MMG shall also be entitled to an equitable accounting of all earnings, profits, and other benefits arising from such violation.

7.05   Notwithstanding Subsection 11.07 of this Agreement, if the restrictions contained in this Section 7 are determined to be unreasonable by a court of competent jurisdiction, MMG and the Physician agree to the reformation of such restrictions by the court to limits which may reasonably grant MMG the maximum protection permitted by applicable law in such circumstances.

## 8.   NON-DISPARAGEMENT

The Physician shall be obliged to promote and not denigrate the image of MMG or the Medical Center(s) as an outstanding provider of medical care and treatment. The Physician shall not make public or private statements to MMG's or Medical Center(s)' employees, members of the Medical or Professional Staff of the Medical Center(s), or to the general public which would or could impugn or actually harm the image of MMG or the Medical Center(s) or its Medical or Professional Staff or Administration, except as required by applicable law. Violation of the foregoing shall be a breach of this Agreement. For purposes of this Section 8, however, a direct and confidential communication made in good faith to MMG's Administration or officers of the Medical or Professional Staff regarding the quality or efficiency of care rendered by MMG at the Practice, made with the intent of improving the quality or efficiency of care rendered by MMG at the Practice, shall not be considered to be in violation of this Section 8 or in breach of this Agreement.

## 9.   REFERRALS AND PROFESSIONAL JUDGMENT

9.01   As a subsidiary of the Corporation, MMG is part of the Corporation's integrated health care delivery system that includes general acute care hospitals; post-acute health care services; urgent care centers; outpatient surgical, diagnostic and rehabilitation facilities; and a wide variety of other health care services. Consistent with the mission of the Corporation, the subsidiaries of the Corporation provide services to patients under principles of: (a) a patient-centered care philosophy and supporting initiatives; (b) continuous quality improvement and assessment policies and processes; (c) community affairs involvement; and (d) cost effective delivery of care.

As an employee of MMG, the Physician will refer patients needing further health care services to subsidiaries of the Corporation, except: (i) if the patient expresses a preference for a different provider, practitioner, or supplier; (ii) if the patient's insurer determines the provider, practitioner, or supplier the patient must use; or (iii) the referral is not in the patient's best medical interests in the Physician's professional medical judgment.

The foregoing requirement relates solely to the Physician's services under this Agreement.

9.02   MMG acknowledges that although the Physician is an employee, the Physician has independent discretion to make all professional medical judgments relating to the services provided to patients under this Agreement.

07/22/21

MCL 0011

**10.**     **CONFIDENTIAL INFORMATION**

The Physician agrees that all Confidential Information that they come into possession of by reason of employment with MMG is proprietary to, and may constitute a trade secret of, MMG. The Physician shall not, during the term of this Agreement and thereafter, directly or indirectly disclose or acknowledge the content of any Confidential Information to any unauthorized person. "Confidential Information" includes all information relating to the operations of MMG which has not been specifically designated for release to the public by an authorized representative of MMG, this Agreement, patient information, business plans, marketing plans and materials, financial information and data, pricing information, methods of operation, and other similar information that was developed by or originated with MMG for its own use. On the expiration or earlier termination of this Agreement, the Physician shall deliver all records, files, documents, and other tangible things containing any Confidential Information to MMG without making or retaining copies or notes of such Confidential Information.

All Confidential Information will be returned to MMG upon the expiration or earlier termination of this Agreement, or at any time during the term of this Agreement upon the request of MMG. The Physician will use best efforts to prevent the unintentional or unauthorized disclosure or use of or access to the Confidential Information. The Physician will also promptly notify MMG of any circumstances which the Physician has knowledge of relating to any unauthorized disclosure or use of or access to such Confidential Information by any unauthorized person.

Notwithstanding any other provision of this Agreement, disclosure of Confidential Information shall not be precluded if such disclosure (a) is in response to a valid order of a court or other governmental body, provided that the Physician shall first have given notice to MMG and shall have made a reasonable effort to obtain a protective order requiring that the Confidential Information so disclosed be used only for the purposes for which the order was issued; (b) is otherwise required by law; or (c) is otherwise necessary to establish rights or enforce obligations under this Agreement, but only to the extent that any such disclosure is necessary.

**11.**     **GENERAL PROVISIONS**

11.01   To the extent applicable, it is intended that all of the benefits and payments under this Agreement satisfy, to the greatest extent possible and to the extent applicable, the exemptions from the application of Section 409A of the Internal Revenue Code ("Section 409A") provided under Treasury Regulations 1.409A-1(b)(4), 1.409A-1(b)(5) and 1.409A-1(b)(9), and this Agreement will be construed to the greatest extent possible as consistent with those provisions. If not so exempt, this Agreement (and any definitions hereunder) will be construed in a manner that complies with Section 409A and incorporates by reference all required definitions and payment terms. For purposes of Section 409A (including, without limitation, for purposes of Treasury Regulation Section 1.409A-2(b)(2)(iii)), the Physician's right (if any) to receive any installment payments under this Agreements (whether reimbursements or otherwise) will be treated as a right to receive a series of separate payments and, accordingly, each installment payment hereunder will at all times be considered a separate and distinct payment. MMG makes no representation that any or all of the payments described in this Agreement will be exempt from or comply with Section 409A and makes no undertaking to preclude Section 409A from applying to any such payment. The Physician understands and agrees that the Physician shall be solely responsible for the payment of any taxes, penalties, interest or other expenses incurred by the Physician on account of non-compliance with Section 409A.

8                                              07/22/21

MCL 0012

11.02   This Agreement is governed by and construed in accordance with Michigan law, without regard to conflict of laws principles. Each party specifically consents to Michigan as the proper jurisdiction for all legal actions arising directly or indirectly from this Agreement and agrees that the state or federal courts located in Michigan shall be the exclusive forum and venue for any such action. Any claim, action, suit, or charge ("Claim") against MMG, or any entity affiliated with, owning, owned by, or having ownership in common with MMG ("Related Entity") in connection with this Agreement that has a statute of limitations longer than 180 days must be brought within 180 days of the event giving rise to the claims or be forever barred. The Physician waives any limitation periods to the contrary. Also agrees to not be a member of a class action lawsuit against MMG or any Related Entity. **EACH PARTY HEREBY WAIVES ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY ACTION OR LITIGATION IN ANY WAY ARISING OUT OF OR RELATED TO THIS AGREEMENT.** This Subsection 11.02 shall apply to any claim against MMG, its Related Entities, or any of their parents, successors, assigns, members, directors, officers, agents, or current or former employees.

11.03   This Agreement is binding on, and is for the benefit of, the parties, their successors, and permitted assigns, and is not for the benefit of any other person or entity, including, but not limited to, patients and their representatives. Neither this Agreement nor any of the duties or obligations under this Agreement may be assigned by either party without the express written consent of the other. Notwithstanding anything to the contrary in this Agreement, MMG may assign this Agreement without the consent of the Physician to any Related Entity.

11.04   All headings in this Agreement have been inserted for convenience only and do not interpret or limit the scope, extent or intent of any provision of this Agreement. This Agreement has been examined by both parties and has been found to be satisfactory to both and, as such, it will not be construed against either party because either party created a particular portion of the Agreement.

11.05   This Agreement, together with its exhibit(s), supersedes and terminates any and all prior agreements, contracts, understandings and the like between the parties and constitutes and expresses the complete and entire agreement of the parties with respect to the subject matter of this Agreement. No change or amendment of any of the terms or provisions hereof will be binding unless in writing and signed by the party against whom the same is sought to be enforced. Neither the failure of either party to exercise any right, power, or remedy provided under this Agreement or to insist upon compliance by any other party with its obligations under this Agreement, nor any custom or practice of the parties at variance with the terms of this Agreement, will constitute a waiver by such party of its right to exercise any such right, power, or remedy or to demand such compliance. The waiver by a party of any breach or violation of any provision of this Agreement will not operate as, or be construed to be, a waiver of any subsequent breach or violation hereof.

11.06   Upon the expiration or earlier termination of this Agreement, the rights and obligations of the parties hereunder shall terminate, except for (a) rights and obligations accrued as of the termination, (b) rights and obligations arising out of events occurring prior to the termination, and (c) rights and obligations under Sections 7 and 10.

11.07   Any notices delivered under this Agreement will be in writing, sent to the applicable address below (unless notice of a change of address is furnished by the party to be notified),

9                                    07/22/21

MCL 0013

and will be deemed delivered: (a) upon delivery if delivered in person; (b) three business days after deposit in the U.S. mail and sent via registered or certified mail, postage prepaid; (c) one business day after deposit with a commercial courier and sent overnight. In the event that the Physician's address shown below is no longer effective for corresponding with the Physician, the address then maintained by the Medical Center(s)' Medical Staff as the Physician's home address shall be the Physician's address for receiving notice under this Agreement.

PHYSICIAN:

CHARLES CHRISTENSEN, D.O.
3697 Port Austin Road
Port Austin, Michigan 48467

MMG:

McLaren Medical Group
G-3235 Beecher Rd
Flint, Michigan 48532
Attention:  President/CEO

11.08   Any provision, or any portion thereof, of this Agreement that is prohibited or unenforceable in any jurisdiction will, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

11.09   This Agreement may be executed in multiple counterparts, each of which will be deemed an original, and all of which together will constitute one and the same instrument, whether by original, electronic, or facsimile signature.

By their signatures below, the undersigned, each being an authorized representative of the applicable party, agree that the terms of this Agreement will be effective as of the Effective Date.

**MMG**

McLaren Medical Group

_____
Julie Lepzinski, BSN, MBA, FHM
President and Chief Executive Officer

**PHYSICIAN**

CHARLES CHRISTENSEN, D.O.

7/21/2021

07/22/21

MCL 0014

and will be deemed delivered: (a) upon delivery if delivered in person; (b) three business days after deposit in the U.S. mail and sent via registered or certified mail, postage prepaid; (c) one business day after deposit with a commercial courier and sent overnight. In the event that the Physician's address shown below is no longer effective for corresponding with the Physician, the address then maintained by the Medical Center(s)' Medical Staff as the Physician's home address shall be the Physician's address for receiving notice under this Agreement.

PHYSICIAN:

CHARLES CHRISTENSEN, D.O.
3697 Port Austin Road
Port Austin, Michigan 48467

MMG:

McLaren Medical Group
G-3235 Beecher Rd
Flint, Michigan 48532
Attention: President/CEO

11.08   Any provision, or any portion thereof, of this Agreement that is prohibited or unenforceable in any jurisdiction will, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

11.09   This Agreement may be executed in multiple counterparts, each of which will be deemed an original, and all of which together will constitute one and the same instrument, whether by original, electronic, or facsimile signature.

By their signatures below, the undersigned, each being an authorized representative of the applicable party, agree that the terms of this Agreement will be effective as of the Effective Date.

**MMG**

McLaren Medical Group

/s/Julie Lepzinski

_____
Julie Lepzinski, BSN, MBA, FHM
President and Chief Executive Officer

**PHYSICIAN**

CHARLES CHRISTENSEN, D.O.

_____

10                                          07/22/21

MCL 0015

EXHIBIT A
MCLAREN MEDICAL GROUP
QUALIFICATIONS & DUTIES

The Physician will perform professional medical services in accordance with this Exhibit A.

1. **QUALIFICATIONS**

   The Physician shall have the following qualifications:

   1.01  All qualifications required to be credentialed as a Pediatrics provider at MMG and the Medical Center(s).

   1.02  Continuous membership in good standing of the Medical or Professional Staff of the Medical Center(s) without reduction, suspension, or termination. If the Physician is a specialist, the Physician must also have clinical privileges at the Medical Center(s) without reduction, suspension, or termination. For purposes of clarification, the Agreement grants Physician no right to Medical Staff membership.

   1.03  All qualifications, including without limitation, board eligibility and/or board certification, required by Blue Cross and Blue Shield of Michigan, the Medicare and Medicaid third-party payor programs, and all managed care, alternative health care delivery or direct contracting programs in which MMG participates, to enable the Physician to be a participant in each such program. Board eligibility or certification must be from a board recognized by the American Board of Medical Specialties or the American Osteopathic Association, as applicable.

2. **DUTIES**

   2.01  The Physician's employment shall be considered 1.0 full time equivalent (FTE) units, which equals 40 hours per week of direct patient care hours in addition to time spent performing other duties. Direct patient care hours means time spent at the Practice or the Medical Center providing, or being available to provide, in-person care to patients. Hours may include evening and weekend hours at the Practice or the Medical Center, scheduled by MMG on an equitable basis with other providers in the Practice.

   2.02  The Physician will be responsible to the President and Chief Executive Officer of MMG or their designee for all matters pertaining to the Practice.

   2.03  The Physician shall perform the following duties:

   (a)  Perform all services necessary for and devote best efforts to the proper conduct of the Practice.

   (b)  Provide medical evaluation, direction, consultation, and follow up care for patients of the Practice as appropriate in the specialty of Pediatrics. If the Physician is a specialist, the Physician must provide follow up care to patients of the Practice admitted for inpatient care.

   (c)  Provide on call coverage as is appropriate and customary for MMG's physician-employees.

11                                                     07/22/21

MCL 0016

(d)   Serve as supervising physician for physician's assistants and other mid-level providers employed or engaged by MMG; *Per Draft Agreement ē Compensation.*

(e)   Provide leadership for clinic and community relations and maintain active liaison with members of the medical community through Medical or Professional Staff membership and participation in Medical or Professional Staff activities of the Medical Centers;

    (i)   Contribute to developing, planning, organizing, and directing MMG's Pediatrics programs.

    (ii)   Represent MMG in meetings and with professional groups regarding Pediatrics issues.

(f)   Participate in the physician and non-physician education and teaching programs of MMG as reasonably requested by MMG.

(g)   Participate in MMG's performance evaluation processes in order to validate Physician's professional capabilities, productivity, and quality;

(h)   Accept all patients who present themselves to the Practice for treatment or who are referred to the Physician, regardless of such patients' medical insurance, ability to pay, or participation in any managed care or alternative health care delivery programs;

(i)   Be present and ready to see patients for their scheduled appointments;

(j)   Systematically assess patients' health status, arrive at appropriate diagnosis(es), and implement care plan for effective clinical outcomes;

    (i)   Consider thorough range of treatment/preventive options and arrives at a recommended course of action that is age appropriate, culturally appropriate, realistic and attainable.

    (ii)   Appropriately manage patient care and health status following initiation of treatment/preventive plan and monitors and adjusts as warranted.

    (iii)   Communicate effectively with patients and family so that they understand their diagnosis, treatment plans and need for follow-up care.

    (iv)   Educate and encourage patients to become an active participant in their own health care related behavior and provide patient education materials for use in encouraging wellness.

    (v)   Seek consultation and advice by providing adequate information to consulting physicians and communicate requests effectively or respond to such requests from the referral source in a courteous, professional, and timely manner.

    (vi)   Document according to established guidelines to facilitate ongoing quality of care in a timely manner.

12

07/22/21

MCL 0017

(vii)    Perform appropriate medical procedures within scope of practice as defined by MMG credentialing and privileging processes.

(viii)    Delegate direct and indirect patient care activities to appropriate personnel.

(ix)    Respond appropriately to emergent situations.

(x)    Review and follow-up on complaints and concerns about medical care.

(xi)    Take action to assure continuity of care for patients

(k)    Contribute to effective and efficient practice management policies and practices that support patient access to medical care;

(i)    Collaborate in establishing production numbers to be budgeted and achieve targeted goal.

(ii)    Support appropriate billing for professional service through timely documentation and maintaining adequate knowledge of MMG billing policies and procedures.

(iii)    Respond to telephone calls in a timely fashion.

(l)    Manage patient care through appropriate use of available resources.

(i)    Appropriately prescribe and order ancillary services.

(ii)    Utilize the MMG referral network appropriately.

(iii)    Promote the appropriate length of stay for patients.

(m)    Perform such additional services as MMG may reasonably request from time to time.

13

07/22/21

MCL 0018

## EXHIBIT B
## MCLAREN MEDICAL GROUP
## ANNUAL PROFESSIONAL ALLOWANCE

This Exhibit contains the annual allowance for the Physician, described in Subsection 2.03(a) of the Employment Agreement. Each Contract Year, the Physician will receive a credit in the amount of $4,000 to be used for the following expenses:

(a)     Continuing Medical Education (CME) expenses which will include, but are not limited to, the costs of attending courses, seminars and conferences, and the cost of professional publications and tapes that have CME credit available. The Physician must obtain the approval of the President and Chief Executive Officer of MMG or their designee for the reimbursement before attending CME related courses, seminars, and conferences or before purchasing CME related materials;

(b)     Reimbursement of the Physician's medical society/medical staff dues for which the Physician chooses membership; and

(c)     Work-related cellular phone expenses.

In addition to the $4,000 credit, MMG shall reimburse the Physician for the costs of their state of Michigan physician license and DEA controlled substances license, so long as supported with appropriate receipts and other documentation required by MMG.

Requests for reimbursement that is related to MMG business should be submitted on a monthly basis. Submissions older than eighty days (80) from the original invoice date will not be reimbursed. MMG will reimburse for only one (1) cellular phone service per physician. Multiple services on the same invoice must be able to be differentiated from the Physician's service on the invoice by cellular phone number or some other method.

Any unused portion of the annual allowance will be forfeited. Any reimbursement claimed by the Physician must be supported with appropriate receipts and other documentation as required by MMG. This annual allowance is based on Physician's provision 1.0 FTE units or more under the Agreement. In the event Physician is employed for less than 1.0 FTE units, the annual allowance will be proportionately reduced.

If any reimbursements or in-kind benefits provided by MMG pursuant to this Agreement would constitute deferred compensation for purposes of Section 409A of the Internal Revenue Code, such reimbursements or in-kind benefits shall be subject to the following rules: (i) the amounts to be reimbursed, or the in-kind benefits to be provided, shall be determined pursuant to the terms of the applicable benefit plan, policy or agreement and shall be limited to the Physician's lifetime; (ii) the amounts eligible for reimbursement, or the in-kind benefits provided, during any calendar year may not affect the expenses eligible for reimbursement, or the in-kind benefits provided, in any other calendar year; (iii) any reimbursement of an eligible expense shall be made on or before March 15 of the calendar year following the calendar year in which the expense was incurred; and (iv) the Physician's right to an in-kind benefit or reimbursement is not subject to liquidation or exchange for cash or another benefit.

7/21/2021

14

07/22/21

MCL 0019

**EXHIBIT C**
**MCLAREN MEDICAL GROUP**
**2020 BENEFITS AT A GLANCE – PHYSICIAN**

| BENEFIT | ELIGIBILITY REQUIREMENT | EFFECTIVE DATE OF COVERAGE | SUMMARY OF BENEFITS |
|---|---|---|---|
| MEDICAL INSURANCE | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | First of the month following date of hire | Employee may choose from two health insurance options: <br> - HA Premier <br> - HA Premier Plus <br> Employee contributes toward the premium through pre- tax payroll deduction. The contribution rate varies for full and part-time employees and by plan. |
| DENTAL INSURANCE | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | First of the month following date of hire | Employees may choose from three dental insurance plans through Delta Dental: <br> - Delta 1000 <br> - Delta 1200 <br> - Delta 1500 <br> Employees contribute toward the premium through pre-tax payroll deduction. Employees pay 100% of dental plan premiums. |
| VISION INSURANCE | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | First of the month following date of hire | Employees may choose from two vision insurance plans through EyeMed: <br> - EyeMed Core <br> - EyeMed Buy-Up <br> Employees contribute toward the premium through pre-tax payroll deduction. The contribution rate varies for full- and part-time employees and by vision insurance plan. Part-time employees are only eligible to enroll in the EyeMed Buy-Up plan which also includes the Core exam benefit. |
| LIFE INSURANCE | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | First of the month following date of hire | Employer pays for 100% of the premium for coverage equal to 2 times base annual salary, up to a maximum of $300,000 (policy includes Accidental Death & Dismemberment). Coverage is reduced at ages 65 and 70. |
| OPTIONAL LIFE INSURANCE | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | First of the month following date of hire | Employee can purchase additional optional term life insurance for the employee, the employee's spouse and the employee's dependent child(ren) through payroll deduction. Employee must elect optional life insurance for themselves in order to enroll in spouse and/or child(ren) optional life insurance. Coverage is reduced at ages 65 and 70. After initial 30 day enrollment period, evidence of insurability is required. |

07/22/21

MCL 0020

**EXHIBIT C**
**MCLAREN MEDICAL GROUP**
**2020 BENEFITS AT A GLANCE – PHYSICIAN**

| BENEFIT | ELIGIBILITY REQUIREMENT | EFFECTIVE DATE OF COVERAGE | SUMMARY OF BENEFITS |
|---|---|---|---|
| SHORT TERM DISABILITY | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | First of the month following date of hire | Compensation for loss of time due to illness or accident after employee has been disabled twenty one (21) calendar days. Employee required to use PTO for first 21 days of disability. Benefit equal to 60% of pay with a weekly maximum benefit of $4,039. Employee has option to use PTO to make up remaining 40% of pay for remainder of disability period. Maximum benefit period not to exceed 180th day of disability. |
| VOLUNTARY SHORT-TERM DISABILITY BRIDGE PLAN | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | First of the month following date of hire | Eligible employees have an option to purchase an additional week of STD benefits covering the 15th day of disability through the 21st day of disability. The benefit is 60% of base pay to a maximum of $4,039. |
| EMPLOYER PROVIDED LONG TERM DISABILITY | Full Time Employees 70 or more hours per pay | First of the month following date of hire | For extended periods of disability, the employer provides long term disability insurance coverage.  Benefit begins on the 181st day of disability. Benefit equal to 60% of pay with a monthly maximum benefit of $17,500. |
| VOLUNTARY LONG TERM DISABILITY | Full Time Employees 70 or more hours per pay | First of the month following date of hire | Eligible employees have an option to purchase additional long term disability coverage of up to 10% of base pay. |
| FLEXIBLE SPENDING ACCOUNTS | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | First of the month following date of hire | Pre-tax earnings deferred to an account that is then used to pay expenses.  Employees may choose from two Flexible Spending Accounts:<br>-    A Medical Reimbursement Account is used to pay co-pays, deductibles, co-insurance and other eligible medical expenses not covered by medical, dental or vision plans.  The yearly maximum is $2,650.  The plan includes a $500 year to year roll over provision.<br>-    A Dependent Care Account is used to pay for child care to age 13 or elder care expenses for dependents.  The yearly maximum is $5,000.  (Dependent Care FSAs may be limited to comply with IRS non-discrimination rules). |
| PAID TIME OFF | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | Employees begin accruing PTO from Date of Hire (must complete probation period before use) | PTO is to be used to cover absences due to illness, vacation, personal business, designated holidays, and leaves of absence.  PTO accrual per 80 hours of pay as follows:<br>Years of Service    Max Hr/Days    Per Hour Paid    Max Hrs/Per Pay<br>0-4                208 Hrs/26 Days    0.1000            8.00<br>5-9                248 Hrs/31 Days    0.1192            9.54<br>10+                288 Hrs/36 Days    0.1385            11.08<br>PTO accrual will be pro-rated for hours paid less than 80 hours. Unused balance paid at 100% at termination. Maximum PTO bank is 320 hours. |
| HOLIDAYS | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | Date of Hire | New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day.  Employees are required to use PTO for the holiday.  (Employees can use PTO during probationary period to cover holidays). |

07/22/21

MCL 0021

**EXHIBIT C**
**MCLAREN MEDICAL GROUP**
**2020 BENEFITS AT A GLANCE – PHYSICIAN**

| BENEFIT | ELIGIBILITY REQUIREMENT | EFFECTIVE DATE OF COVERAGE | SUMMARY OF BENEFITS |
|---|---|---|---|
| EMPLOYEE ASSISTANCE PROGRAM (EAP) | All Employees | Date of Hire | Provided by Guidance Resources. Free short-term counseling for employees or immediate family members, as well as many free resources for work-life solutions. Call 844-449-6539 or online www.guidanceresources.com. COMPANY ID: MCLAREN |
| COBRA | All Full Time and Part Time employees losing COBRA eligible benefits | First of the month following termination | Employees that lose their benefit eligibility will be offered COBRA. Employees will have 60 days to elect COBRA and benefits will be effective the first day of the month following employee's loss of eligibility.  Employee is responsible for paying full cost for the elected benefits plus 2% to cover administrative costs. |
| VOLUNTARY ACCIDENT INSURANCE | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | See Benefits Communication Specialist for enrollment details. | Designed to supplement employer-sponsored health coverage, Accident Insurance pays specific benefit amounts for expenses resulting from non-work related injuries or accidents. Hospitalization, physical therapy, intensive care, and emergency transportation are some of the out-of-pocket expenses that are covered by this plan. Benefits are paid lump-sum, tax-free to employees and generally increase with the severity of the accident. |
| VOLUNTARY CRITICAL ILLNESS INSURANCE | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | See Benefits Communication Specialist for enrollment details. | Critical Illness Insurance provides cash benefits if you are diagnosed with a covered critical illness, such as cancer, a heart attack, or stroke. More importantly, the plan helps you focus on recuperation instead of the costs of medical and personal bills. This coverage also includes an annual health screening benefit of $50. Cash benefits are paid directly to the insured upon diagnosis of a covered critical illness. |
| VOLUNTARY HOSPITAL INDEMNITY INSURANCE | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | See Benefits Communication Specialist for enrollment details. | Hospital Indemnity Insurance is designed to help provide financial protection for covered individuals by paying a benefit due to hospitalization. Employees can use the benefit to meet the out-of-pocket expenses, deductibles and extra bills that can occur. Hospital admission and daily indemnity lump sum benefits are paid directly to the employee based on the amount of coverage listed, regardless of the actual cost of treatment. |
| EMPLOYEE LIFE OPTION PLUS INSURANCE | Full Time employees 70 + hours per pay Part Time employees 40-69 hours per pay | See Benefits Communication Specialist for enrollment details. | Permanent Life Insurance is designed to provide coverage in addition to existing term life insurance. Permanent Life Insurance protects your family for an entire lifetime and can build cash value that you can use while you are still alive. The policy is owned by you, so you can keep your coverage even when you retire or change jobs. As long as the premium continues to be paid your rate is guaranteed never to increase and your benefit can never decrease. |

17                                      07/22/21

MCL 0022

**EXHIBIT C**
**McLAREN MEDICAL GROUP**
**2020 BENEFITS AT A GLANCE – PHYSICIAN**

## RETIREMENT

| Benefit | Eligibility | Effective Date | Summary of Benefits | | |
|---|---|---|---|---|---|
| | | | **When am I eligible?** | | |
| | | | Your Contributions | Employer Match | Employer Basic |
| | | | Immediately | After 1 year of 1,000+ hours of service | After 1 year of 1,000+ hours of service |
| | | | **Amount** | | |
| | | | Your Contributions | Employer Match | Employer Basic |
| 403(b) Plan | All Employees | Date of Hire | (Pre-tax and/or Roth) Up to 85% of your pay 2020 maximum is $19,500 If age 50 or over anytime during 2020, additional $6,500 | 50% of first 6% of pay | 2% of pay |
| | | | Vesting (ownership of the employer contributions) After 2 calendar years of 1,000+ hours per year, you are 100% vested. | | |
| | | | NOTE:  Contributions made prior to meeting eligibility will NOT be matched. | | |
| | | | Maximum compensation for calculating employer contributions is $280,000. | | |
| 457 Plan | All physicians, other than residents whose compensation is expected to meet or exceed the IRS highly compensated limit of $130,000 for 2020 | Date of Hire | A nonqualified deferred compensation plan to provide for additional savings beyond IRS limits imposed on the qualified 403(b) plan.  Eligible employees may defer up to an additional $19,500 on a pre-tax basis. | | |
| McLaren Capital Accumulation Plan (MCAP) | Members of Cabinet and others designated by an officer of the Corporation, or by the Corporate or subsidiary Board. | Date of Hire | Eligible employees may elect to voluntarily participate in a split dollar life insurance plan sponsored by the employer.  Employer will contribute to the plan an amount equal to 15% of the participant's waived contribution to the plan. | | |

DISCLAIMER:
The aforementioned benefits shall be implemented consistent with the policies and procedures of MHCC ("Policies"), applicable plan documents and certificates of coverage ("Plan Documents"), and applicable laws. The above is provided only as a summary and is not intended to replace or amend Policies or underlying Plan Documents.  Receipt of this information does not imply your eligibility for any one or all of the benefits and programs described.  For further information, please review the respective Policies and Plan Document(s). If any discrepancy between this summary and the Policies or Plan Documents, the Policies or Plan Documents control.   If you need a copy of the Policies or Plan Documents or have questions, see the Human Resources Department. These benefits are subject to change or revision without notice, to the extent permissible under applicable laws. This summary is not a guarantee of past or future benefits. Exception Provisions: If any provision of this summary conflicts with an express provision(s) of an applicable collective bargaining agreement or letter of understanding, the latter shall supersede this summary to the extent necessary to comply with contractual obligations.

Revision Date: 11/8/2019
GroupIDCode: FPHYA

MCL 0023

**Exhibit C**
**McLaren Medical Group**
**2020 Benefits at a Glance – Physician**

# MCLAREN CAPITAL ACCUMULATION PROGRAM (MCAP)

## A Capital Accumulation Plan
## for Healthcare Professionals



19

MCL 0024

EXHIBIT C
MCLAREN MEDICAL GROUP
2020 BENEFITS AT A GLANCE – PHYSICIAN

> Keystone's turnkey approach to providing benefit solutions in this niche market is the difference. Between Keystone and its partner organizations, all of the market-leading resources are in one place.

Every benefit plan Keystone designs is supported with our turnkey approach and methodologies. With Keystone, it is not necessary for employers to navigate between their plan consultants, product providers, and plan administrators. Keystone provides our clients with a one-stop resource for all services that are needed for plan and participant success. Our services include:

- **Comprehensive Enrollment Processes** - Group and individual meetings can be arranged as needed with expert, licensed personnel who are knowledgeable about your organization's basic, voluntary, and supplemental benefit programs.

- **Development of Web-based Enrollment Interface** - We pride ourselves in arranging solutions that fit with your existing systems. These solutions are designed to reflect your organization, not ours or our technology partners.

- **Benefit Plan Administration Services** - Non-qualified supplemental benefit plans have unique support needs. We partner with your organization to determine the appropriate level of support for your organization.

Our dedicated and knowledgeable client service team has the expertise to keep your plan operating efficiently. When you choose Keystone Benefit Group as your partner in delivering supplemental benefits to your physicians, you are choosing the industry leader in experience and innovation.

**Keystone**

4353 Tilly Mill Road • Suite 125
Atlanta, GA 30360
(404) 907-1882

MCL 0025

**EXHIBIT C**
**MCLAREN MEDICAL GROUP**
**2020 BENEFITS AT A GLANCE – PHYSICIAN**



**Healthcare professionals** in today's challenging environment have had to face many obstacles to maintaining their practice and adapting to the current healthcare and Medicare environment. Many of these professionals have opted in recent years to become employees of tax-exempt healthcare organizations in order to accomplish certain objectives which have become increasingly difficult in today's marketplace while remaining in a private practice. The opportunity to transition to or become part of a healthcare system-based practice has solved many issues, but professionals who have become employees of tax-exempt healthcare organizations now experience a challenge that they did not prepare for. Limited to only basic healthcare system retirement savings plans, healthcare professionals are unable to accumulate on a pre-tax basis sufficient post-employment capital in order to accomplish post-employment goals and objectives for them and their families.

This challenge is caused by the very restrictive tax rules that govern deferred compensation plans sponsored by tax-exempt organizations, including hospitals and healthcare systems. These limitations require the physician to be completely unvested in plan benefits to avoid taxation, whether the contributions are made by the organization or the physician.  Ultimately, the accumulated plan benefit must be taxed on a lump sum basis when they become vested, not when they receive benefit payments. Keystone Benefit Group has created a benefit solution that avoids these seemingly impossible provisions and provides a capital accumulation platform that has the flexibility and performance to assist the physician with accumulating the significant tax-advantaged savings needed to achieve their own financial security.

> Finding an acceptable tax-effective method to create capital accumulation that allows voluntary contributions by healthcare professionals is a very challenging exercise for potential plan sponsors and participants.

07/22/21

MCL 0026

**EXHIBIT C**
**MCLAREN MEDICAL GROUP**
**2020 BENEFITS AT A GLANCE – PHYSICIAN**



The unique plan design of the MCAP combines the favorable features of qualified and non-qualified benefit plans while eliminating their disadvantages.

McLaren Capital Accumulation Program (MCAP) is a third generation supplemental capital accumulation program that complies with all applicable Treasury regulations and IRS tax guidance and, in a conservative design and concept, provides healthcare professionals with the ability to contribute on a voluntary basis towards their post-employment benefits. Designed to be a supplement to existing qualified benefit plans and the limited non-qualified plans, the MCAP avoids the restrictive and unattractive aspects of traditional non-qualified benefit plans sponsored by tax-exempt organizations. This plan delivers flexibility and value like no other program or concept.

The superior tax and other quantitative and qualitative advantages of the MCAP provide the employer, executive, and physician with the ultimate solutions to their capital accumulation benefit challenges. With a variety of investment and product choices, the flexibility of the MCAP overcomes the typical limitations of other programs and is effective for employees at all stages of their careers, regardless of age, duration of employment, or proximity to termination of employment.

**KEY FEATURES AND BENEFITS:**

- **VOLUNTARY CONTRIBUTIONS**
- **NO LEGISLATIVE LIMIT ON ANNUAL CONTRIBUTIONS**
- **SUPERIOR TAX-FAVORED BENEFITS**
- **IMMEDIATELY VESTED BENEFITS**
- **PLAN BENEFITS SECURE FROM EMPLOYER CREDITORS**
- **VARIETY OF INVESTMENT CHOICES AND PRODUCTS**
- **FINANCIALLY NEUTRAL ON EMPLOYER FINANCIAL STATEMENTS**

2

07/22/21

MCL 0027

**EXHIBIT C**
**MCLAREN MEDICAL GROUP**
**2020 BENEFITS AT A GLANCE – PHYSICIAN**



**Total Net Benefits Paid**

Chart results above based on the following assumptions: Participant, age 50, contribution of $50,000 per year for 10 years accumulated for 15 years with benefits payable annually for 20 years beginning at age 65. Assumed investment rate of 6% for indexed products and alternatives, assumed federal and state combined ordinary income tax rate of 42.5%, assumed tax rate on after tax investment earnings of 30%. All benefits illustrated are expressed after all plan administrative costs, taxes, expenses, and fees.

07/22/21

MCL 0028

**EXHIBIT C**
**MCLAREN MEDICAL GROUP**
**2020 BENEFITS AT A GLANCE – PHYSICIAN**

The IRS recently went so far as to essentially eliminate all "traditional" deferred compensation plans sponsored by tax-exempt organizations when used as a pre-tax deferral plan (for compensation purposes, this is still shown in the chart as an alternative). In related guidance, the plan design of the MCAP was recently confirmed as being generally exempt from these restrictive rules and limitations that apply to deferred compensation plans. Accordingly, the MCAP provides a benefit that is, on average, 40% to 100% higher with respect to net benefits received by participants through after-tax investment or alternative plans. Moreover, all benefits can be fully vested from the inception of the plan without taxation and are totally secure from employer creditors as well. Certain financial products are required to be utilized in order to be exempt from the IRS rules relating to deferred compensation plans. Accordingly, specialized annuity and life insurance products can be utilized under the MCAP, providing the maximum tax advantages to the participant with the most efficient financial results possible.

> The IRS and Treasury have provided tax guidance in recent years that further restricts traditional methods of providing deferred compensation. Related guidance has confirmed that the MCAP is generally not subject to these rules.



24

07/22/21

MCL 0029

### EXHIBIT C
### MᴄLᴀʀᴇɴ Mᴇᴅɪᴄᴀʟ Gʀᴏᴜᴘ
### 2020 Bᴇɴᴇꜰɪᴛꜱ ᴀᴛ ᴀ Gʟᴀɴᴄᴇ – Pʜʏꜱɪᴄɪᴀɴ



**Our ability to provide creative, customized benefit solutions is our trademark.**

Known industry-wide for our technical competence and creativity, our clients expect customized solutions for their benefit needs and we deliver. From the most traditional benefit arrangements to those proprietary solutions that define our organization, we are able to exceed client expectations by consistently delivering results that exceed expectations. Our staff is comprised of talented professionals with legal, actuarial, and financial services experience that is unmatched in the marketplace.

We assist non-profits and their higher compensated executive and physician employees with tax planning strategies that provide the needed tools to retain, reward, and recruit the highest level talent.

Our proprietary solutions and concepts allow the higher-compensated employee or health professional to achieve their tax planning and financial goals by implementing supplemental capital accumulation programs that allow the individual to create ultimate financial security.

5

07/22/21

MCL 0030

**EXHIBIT C**
**MCLAREN MEDICAL GROUP**
**2020 BENEFITS AT A GLANCE – PHYSICIAN**



> The MCAP can be used by employed physicians as an extremely tax-effective capital accumulation vehicle, providing them with opportunities similar to what their peers have in private practice.

Tax and retirement planning are two of the most important financial considerations for physicians. For physicians that are employees of healthcare organizations, the standard employer-provided retirement plans will not allow for adequate contributions or savings for the future. Qualified deferral plans and Section 457(b) plans are terrific programs, but they have modest limits on how much income can be set aside on a pre-tax basis.

The MCAP concept allows physicians and executives to fill the needed gap by offering a plan that, structured properly, allows unlimited amounts to be contributed on a voluntary basis. Contributions to the plan are flexible and can be contributed on monthly, quarterly or annual basis.

While the plan design of the MCAP provides a unique framework that maximizes the benefits received, Keystone provides an array of attractive investment choices and products in connection with the MCAP that appeal to all levels of investment experience and risk tolerance. From the most simplified insurance and annuity products to more complex financial securities, Keystone and the MCAP make your dream of a secure financial future a reality.

Imagine the ability to create your own financial security while gaining the benefits of working within a stable healthcare practice environment. With the MCAP, you create your own road map towards financial success.

6

07/22/21

MCL 0031