Exhibit 18

| | |
|---|---|
| **From:** | Frye, Sarah |
| **To:** | Keiper, Joel; Ropp, Brad; Henry, Carla; Putvin, Adam |
| **Cc:** | Provider_Comp |
| **Subject:** | FW: Please call my representative and schedule a meeting with him |
| **Date:** | Tuesday, September 5, 2023 8:56:48 PM |
| **Attachments:** | Thumb Dr. Christensen - PC Evergreen Parallel Model.pdf |
| | Sarah Scan_2023_09_05_11_11_59_242.pdf |

Δ π EXHIBIT 13
Deponent Christensen
Date 7/10/21  Rptr.
WWW.DEPOBOOK.COM

Good afternoon,

I received the attached packet of notes from Dr. Christensen at the office today via interoffice mail.
He is setting up a meeting with me to review his thoughts in the near future.

I will let you know as he provides additional perspective,

Sarah

Sarah D. Frye
Sr. Director of Operations
Department of Primary Care
McLaren Medical Group
(m) 239.300.1217
Sarah.Frye@mclaren.org

**From:** Frye, Sarah
**Sent:** Wednesday, August 2, 2023 9:41 AM
**To:** Charlie Christensen <Charlie.Christensen@mclaren.org>
**Cc:** Pinelli, David <David.Pinelli1@mclaren.org>; Rates, Kenneth <Kenneth.Rates@mclaren.org>
**Subject:** RE: Please call my representative and schedule a meeting with him

Dr. Christensen,

Individuals are welcome to have private council provide additional clarification of our agreements.
We will not incur expense on your behalf, so please pass along the contract once received as well as
the parallel model at your discretion. The evergreen documents are effective the next calendar
quarter from the existing contract year, so your evergreen contract commencement is 10/1/2023.
Your current agreement will remain in effect through Sept 2023.

As you know, contracts are electronically signed via the Adobe link sent to your McLaren email.

Take care,

Sarah

Sarah D. Frye
Sr. Director of Operations
Department of Primary Care
McLaren Medical Group
(m) 239.300.1217
Sarah.Frye@mclaren.org

**From:** Charlie Christensen <Charlie.Christensen@mclaren.org>
**Sent:** Wednesday, August 2, 2023 8:44 AM
**To:** Frye, Sarah <Sarah.Frye@mclaren.org>
**Subject:** Please call my representative and schedule a meeting with him

Hello, I know you wanted a meeting this morning, but health reasons I hired a
representative for my interests in the contract negociations. This week, I sent 2 emails
to Ken but no response. Also Mr Cohen has not been contacted by your negocaition
team. Also to note I gave my proposal for a new contract on 5/16/2023 and I received

MCL 0166

from Ken 2 verbal guarantees that I would have a response in writing and nothing was ever delivered. With absence of action, long waits and the mounting anxiety, repeats of past contract negociation, long delays in getting paid for extra call to save my family in Ukraine, non-scribe scribe....(PTSD) my mental health is impacted. So please do not be offended and please understand I have no other choice in hiring an attorney as a proxy, a negotiator. So please have a call with him and lets iron out a contract .... and move forward!

Thank you Sincerely Charlie Christensen

# Barney Ira Cohen

Health Care Attorney at Evanston, IL

(312) 804-1739

barney@conciergehealthcareattorneysllc.com

McLaren confidentiality statement: "The information contained in this communication, including attachments, is confidential, may be privileged, and is intended only for the use of the named recipient(s). Unauthorized use, disclosure, forwarding or copying is strictly prohibited and may be unlawful. If you have received this communication in error, please notify me IMMEDIATELY at the phone number or pager listed above."



**PRIMARY CARE - PEDS**
**Parallel Model - Clinical Comp Model Projections**
**Dr. Charles Christensen**
**Effective Date of 10/01/23**



| | wRVU Productivity Compensation | | | Value Based Incentive | |
|---|---|---|---|---|---|
| Overview | Volume | Comp Rate | Productivity Comp | VBI Quality | Results |

| | Clinical FTE | Market | Comp Method | wRVU Rolling 12 Thru April 2023 | Imputed wRVU Rate | wRVU Productivity Comp per Comp Method | Earned | wRVU Productivity Comp + VBI |

| Current Model | 1.00 | Thumb | Guarantee | 3,421 | 64.31 | $ 220,000 | $ - | $ 220,000 |
| | | | | | | | | $ 10,000 |
| Future Model | 1.00 | Thumb | PC Evergreen 2023 (Guarantee, 24 months) | 3,421 | | $ 230,000 | | $ 230,000 |

\* Note: Eligibility for both Productivity Compensation and Quality Compensation begin upon transition off of Guarantee.
Physician may request to relinquish Guarantee and move to Full Productivity by submitting the required form to ProviderComp@McLaren.org no less than 45 days prior to the first date of the upcoming contract quarter.

**Draw Change Calculation**

| | Draw Annual | Draw Per Pay Period |
|---|---|---|
| Current Model | $ 220,000 | $ 8,462 |
| | $ 10,000 | $ 385 |
| Future Model $ 230,000 | $ 230,000 | $ 8,846 |
| | TCC less VBI | TCC less VBI Annual 80% | New Draw Per Pay Period |

**FAQ's**
1. Model Assumptions
   a. Note Total Cash Comp (TCC = wRVU Productivity + VBI Opportunity + Other Comp )
   b. VBI & Incentive Pass-Thru shown above represents most recent payments processed
   c. Some residual incentive pass-through will process based on date earned, as contractually applicable
   d. Imputed wRVU Rate = Current Estimated Clinical Productivity / wRVU Rolling 12 Thru April 2023
   e. Corridor set at +-10% of Current Model Imputed wRVU Rate
   f. Contracts are structured as evergreen which includes auto-renewal and annual organizational benchmark adjustments
2. Draw
   a. Set at 80% of TCC less VBI. VBI Opportunity paid annually and is not included in draw calculation.
   b. Total Cash Comp (TCC) will run through comp reconciliation and auto-pay out quarterly
   c. Other comp support items are to be submitted monthly to Provider_Comp@mclaren.org

MCL 0168

*Fyi*

*\* Will Go Over ē Attorney + Will have Addirions possible in Furure.*

MTR/MMG                                                    Charles Christensen DO

In response to your 'Docu-Sign Contract' 8/10/2023 email. Title of email was obscured because it was from outside and protected by system rules.

First, the contract I received 'Docu-Sign Contract' had none of the considerations of the proposals that I brought to the local administration Tara Smiley on 5/16/2023 3:07pm.

Second, the email did not have a discussion/prelude to the contents of such Admin. proposed contract. No consideration noted to the process of negotiation per say.

Third, the contract had no carry over considerations from my previous contract. No Compact for Scribe. No past consideration for miles of exclusion. And many other considerations that were vastly important in past negotiation of the old contract.

So with these considerations in place.

1. The productivity formula for income:
   a. I have no control over staff (currently CNAs not MAs) Extremely low quality in multiple considerations.
   b. I have no control over the cleanliness of the office. Inconsistency up to 3 weeks before cleaning of office have been noted and other ongoing inconsistencies in quality and daily scheduling.
   c. I have no control of advertisements. I only recently had a radio spot. 1st time in 11 years.
   d. I have no control over reminding patients of their appointments, hence the large no-show rate. I have asked for txt reminders several times for patient parent reminders, but none have ever been instituted.
   e. Past audits showed large errors in under coding.
   f. I have no control over post clinic patient McLaren interactions (billing, labs ...)

2. These risks provided by how MMG have provided for my practice is inconsistent with a productivity model.
   a. Track record and current management my practice is/would be vastly and almost completely out of my control.
   b. I live for the service provided as a physician. I have constructively provided feedback to administration with little to no response.

3. Failures of providing Scribe as noted in my old contract.
   a. Negotiations of 'Compact' August 1, 2022 for the reasons of need because of my learning disability. This was discussed with Jeff and Sarah F. on multiple occasions and the 'Compact' was hence created from said multiple negotiations and consistent with accommodations provided by HMC, my education, residency, ABP and the State of Michigan LARA.

8/22 MCL 0169

b. On the returned "old" contract the 'Compact' was deleted and never returned. This was later found out afterwards.

c. Last year after multiple times of me insisting on this being in my contract after my Scribe (a person in the clinic) leaving and not being replaced. I was verbally abused by the local administration "What makes you so special". This was yelled at me by the same person that negotiated the 'Compact'. This incident was in front of all the staff in my office. This meeting was about problems the staff were having handling and scheduling abuse appointments, not me to be abused. II was verbally abused. I had extremely confidential information of my disability publicly 'outed' by a person that knew how confidential this information was and still yelled at me "What makes you so special".

d. The 'Compact' was found after being falsely accused in Flint by Dr Ropp again of not having the 'Compact' in my contract, he failed to listen to my prepared statement or provide any information of why I need to drive to Flint in January 2023. I did not know any reason for the meeting, I was verbally abused. I asserted that I was being discriminated against for my disability but no conclusion has been provided as of yet.

e. No accounting for the deleted 'Compact' has ever been provided. No explanation or apology has been provided by any administrator.

Conclusion: Any reasonable person would not find this situation agreeable or be able to sign a contract provided in 'Docu-Sign Contract'. I tried to come up with reasonable terms and provided it to administration 3 months prior to the end of this contract. I wanted to move on, to just practicing pediatric medicine, but past practices continue with the nature and content of this new proposed contract.

I do want to continue for reasonable terms and conditions as fair market compensation, a real Scribe, and adjustment in extra call compensation, as in my Contract Proposal 5/162023

Or:

We could de-couple in-patient and out-patient compensation. Call is call (24hrs/day) and adds little to productivity. (adjustment to inflation) So 700$/24hrs on weekdays and 800$/24 hrs on weekends and I would guarantee at least (10 days/month) 120 days a year (as is now). Plus extra days of Call at the same rates.

Out-patient compensation can be WRU but guaranteed with improvements in cleaning, staff, advertisement, recruit NP and a real Scribe (a real person as in the past).

Thank you,

Charles Christenen DO                    8/22/2023 829Am

**New Contract Proposal:**

-Goal: Simple, easy and direct without prolonged/tedious proceedings like last contract. Last contract: Had provisions for a real "scribe" that were left out/lost/not honored. Took 1 years and under significant duress to be signed. These will not be tolerated for my mental well being it can not.

Provisions:

-Comparative Wage and Terms: Attached Comparative from Cass City.

-Salary: $232-250,000 commensurate with experience (I have 21 years of practice and I cover Hospital 1 in 3)
        With WRUs bonus plus

-Extra Call can be negotiated to adjust for inflation since last contract.

-Scribe to be provided even when on vacations.

All negotiations will be handled by a representative but after the last contract all goals and stipulations are firm. Also as part of being respectful this shall be done in a timely manner.

Thank you and will have representative name soon.

Charlie Christensen DO   5/16/2023

*given To Tina Smily Tony 5/16/2023*
*@ 307pm*

**COMPACT**
**Dr. Charles Christensen and McLaren HealthCare**
**August 1, 2021**

1. Dr. Christensen requests the support for documentation through a scribe for his out-patient clinic to ensure thorough and timely documentation.

- McLaren commits to having scribe support for operations, though acknowledges there are times for vacations and instances of vacancies for which there may not be a scribe available. — *But will make up Backlogged Dictations/scribes when They Came Back From Vacation.*

7/22/2021

MCL 0172

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

## MCLAREN MEDICAL GROUP
## PHYSICIAN EMPLOYMENT AGREEMENT

This Physician Employment Agreement (this **"Agreement"**) is by and between McLaren Medical Group, a Michigan nonprofit corporation (**"MMG"**), and **Charles Christensen, D.O.** (**"Physician"**).

### Background

A.      MMG, a subsidiary of McLaren Health Care Corporation (**"McLaren"**), owns and operates various ambulatory care facilities, services and programs.

B.      Physician is licensed to practice medicine in the State of Michigan and is duly qualified to practice medicine in **Pediatrics** (the **"Specialty"**).

C.      MMG desires to employ Physician, and Physician desires to be employed by MMG, on the terms and conditions set forth in this Agreement.

### Agreement

MMG and Physician, intending to be legally bound, agree as follows, **recognizing that the provisions below may be modified by the provisions of Exhibit C, attached:**

1.      **Employment; Conditions Precedent**.  MMG hereby employs Physician, and Physician hereby accepts such employment, on the terms and conditions of this Agreement.  Physician's employment shall commence on **October 1, 2023** (the **"Effective Date"**).  Prior to the Effective Date: (a) Physician shall have a current and unrestricted license to practice medicine in the State of Michigan; (b) Physician shall obtain membership on the medical staff of **McLaren Thumb Region** (the **"Medical Center(s)"**), and at such other MMG-affiliated hospitals and facilities as MMG may specify from time-to-time, with all clinical privileges MMG deems necessary to enable Physician to provide the services required of Physician pursuant to this Agreement; (c) MMG will have completed and be satisfied with the results of Physician's reference, background and sanctions checks; and (d) if not already employed by MMG, Physician shall complete a pre-employment physical and a drug test with results satisfactory to MMG (collectively, the **"Pre-Employment Conditions"**). If Physician fails to satisfy all Pre-Employment Conditions by the Effective Date and/or Physician is not ready, willing, and able to perform Physician's duties under this Agreement on the Effective Date, then MMG may, in its sole discretion, immediately revoke and terminate this Agreement upon written notice.

*[handwritten: I Am Albert Employee]*

*[handwritten: I Am Employed]*

2.      **Term**.  The initial term of this Agreement will commence on the Effective Date and will remain in effect for a period of one year, unless sooner terminated pursuant to Section 1 above or Section 11 below. Thereafter, this Agreement will automatically renew for additional successive one-year periods until terminated in accordance with Section 11 below.

*[handwritten: 4 years (I Am A human. Once Every 4 years is All I Can Handel)]*

3.      **Physician's Duties & Responsibilities**.

a.      **Medical Practice**.  Physician agrees to conduct a medical practice at the location(s) identified in attached Exhibit A and such other and/or additional location(s) as MMG may designate from time to time (the **"Practice"**). Physician shall devote the time, attention, and effort necessary for Physician to perform professional medical services in the Specialty and such other professional services (to the extent Physician is licensed and qualified to provide such services) to patients of the Practice, as well as administrative, supervisory and coverage services, duties and responsibilities described or contemplated in Exhibit A or elsewhere in this Agreement as necessary to fulfill Physician's obligations under this Agreement.  Physician shall work under the direction of, and be responsible to, MMG's President & CEO or designee.

1

DATE

MCL 0173

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

b.    <u>Completion of Medical Records</u>. Physician shall timely and properly complete, in accordance with MMG and Medical Center policies and procedures as such may be amended from time to time, all medical records, charts, reports and forms (collectively, **"Medical Records"**) for professional services rendered by Physician. Physician acknowledges and agrees that all Medical Records shall be and remain the property of MMG or of the Medical Center; <u>provided, however</u>, that Physician shall be given access to Medical Records as required by Applicable Law (as defined in Subsection 4f below). Physician shall not make any change in the Medical Records without the approval of MMG or the Medical Center, as applicable.

*Have A Read Scribe in Office Provided. So one Can Complete Records Timely*

c.    <u>Directed Referrals</u>. As a subsidiary of McLaren, MMG is part of McLaren's integrated health care delivery system that includes general acute care hospitals, post-acute health care services, urgent care centers, outpatient surgical, diagnostic and rehabilitation facilities, and a wide variety of other health care services. Consistent with the mission of McLaren, the subsidiaries of McLaren provide services to patients under principles of: (a) a patient-centered care philosophy and supporting initiatives; (b) continuous quality improvement and assessment policies and processes; (c) involvement in community affairs; and (d) the delivery of high quality, cost-effective health care. As such, McLaren, MMG and the other McLaren subsidiaries have a legitimate business interest in retaining patient referrals for medically necessary care of patients within the Health System. As an MMG-employed physician, Physician will refer patients needing health care services to McLaren subsidiaries, <u>except</u>: (i) if a patient expresses a preference for a different provider, practitioner, or supplier; (ii) if the patient's insurer determines the provider, practitioner, or supplier the patient must use; or (iii) the referral is not in the patient's best medical interests in Physician's professional medical judgment. Likewise, Physician agrees to respond to requests promptly and appropriately for consultations and accept referrals of patients for services within the Specialty from other providers within the McLaren health system. The foregoing requirement relates solely to Physician's services under this Agreement.

d.    <u>Independent Professional Judgment</u>. Notwithstanding the foregoing or anything to the contrary contained in this Agreement, MMG acknowledges and agrees that although Physician is an employee, Physician has independent discretion to make all professional medical judgments relating to services rendered by Physician under this Agreement.

e.    <u>No Conflicts</u>. Physician represents and warrants to MMG that Physician is free to enter into this Agreement, that Physician has not made and will not make any agreements in conflict with this Agreement and that Physician has no agreements or understandings which prohibit Physician's entry into this Agreement. Unless otherwise agreed by MMG in advance, and subject to MMG's then-current practices, policies and procedures, Physician shall not engage in any professional activities for and on behalf of anyone other than MMG. MMG may, at any time, withdraw its consent to any such pre-approved activities immediately upon written notice to Physician.

*→ + MMG*

*Physician +*

f.    <u>Non-Interference</u>. Physician will not disrupt, damage, impair or interfere with the business of MMG, Medical Center, or any entity directly or indirectly owning, owned by, or having ownership in common with MMG (each, a **"Related Entity"**); and is obliged to. promote and not denigrate the image of MMG or any Related Entity as an outstanding provider of medical care and treatment. Physician shall not make public or private statements to MMG or a Related Entity's physicians, members of the medical or professional staffs of any MMG-affiliated hospital or facility, patients, or to the public which would or could impugn, or actually harms, the image of McLaren, MMG or any Related Entity, or the medical or professional staffs or administration of any MMG-affiliated hospital or facility, except as required by Applicable Law. Physician's violation of the foregoing shall be a material breach of this Agreement. Notwithstanding the foregoing, a direct and confidential communication made in good faith to an appropriate member of MMG or a Related Entity's administration or officers of the medical or professional staff of an MMG-affiliated hospital or facility regarding the quality or efficiency of care rendered by MMG at the Practice, made with the intent of improving the quality or efficiency of care rendered by MMG at the Practice, shall not be considered to be in violation of this Subsection 3f or a breach of this Agreement.

2                               DATE

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

4.    **Qualifications and Performance Standards**. At all times during the term of this Agreement, Physician shall:

a.    Maintain a current and unrestricted license to practice medicine in the State of Michigan.

b.    Be a member in good standing of the active Medical Staff of MMG and of the Medical Center with all clinical privileges that MMG determines are necessary for Physician to perform Professional Services under this Agreement.

c.    Be a participating physician (i.e., accept assignment) in Blue Cross and Blue Shield of Michigan, the Medicare and Medicaid third-party payor programs, and all managed care, alternative health care delivery or direct contracting programs in which MMG participates.

d.    Unless waived by MMG, be board eligible or board certified in the medical specialty identified in Exhibit A by a board recognized by the American Board of Medical Specialties or the American Osteopathic Association, as applicable, as required by each program to enable Physician to participate in each such program.

e.    Comply with all bylaws, rules and regulations of the Medical Staff of MMG and of the Medical Center (**"Medical Staff Bylaws"**) and all applicable rules, policies and procedures of MMG and of the Medical Center (**"McLaren Policies"**) as they exist from time to time.

f.    Comply with all applicable federal, state and local government laws, rules and regulations (**"Applicable Law"**).

g.    Comply with all applicable standards of licensing, accrediting, and certifying bodies.

h.    Meet the eligibility requirements of MMG's self-insurance or limited purpose insurance program or any other commercial insurance policy selected by MMG.

i.    Provide professional services in accordance with the standards of professional conduct and practice prevailing in the community and all applicable ethical standards, as reasonably determined by MMG.

*MMG+ Physician*

j.    Not discriminate against any patient on the basis of race, color, gender, age, religion, national origin, disability, source of payment or any other criterion in violation of Applicable Law.

k.    Communicate clearly and effectively in the English language.

5.    **Additional Representations and Warranties**. Physician makes the following representations and warranties to MMG as of the Effective Date and at all times during the term of this Agreement, and will promptly notify MMG of any facts, circumstances or occurrence that affects or may affect the truth and accuracy of such representations and warranties.

a.    Physician has never had his or her license to practice medicine in any jurisdiction suspended, revoked or otherwise restricted, nor has Physician surrendered his or her medical license.

b.    Physician has never had a complaint or report concerning his or her competence or conduct made to any state medical or professional licensing agency and has never been convicted or pled guilty or no-contest to any accusation of having committed a felony or a lesser criminal offense related to health care or to the use or handling of a controlled substance.

3

DATE

MCL 0175

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

c.      Physician has never been debarred, excluded, sanctioned or otherwise ineligible to receive payment for services or items from any government health care program, including, but not limited to, Medicare and Medicaid.

d.      Physician will maintain appropriate knowledge and skills in the Specialty and will provide professional services in accordance with the standards of professional conduct and practice then prevailing in the community, and all applicable ethical standards.

e.      Physician will immediately notify MMG upon learning, whether during or after the term of this Agreement, of any facts, circumstances or occurrence which may result in a claim against either of them or in Physician being debarred, excluded, sanctioned or otherwise ineligible to receive payment for services or items from any government health care program related to Physician's services under this Agreement; and Physician shall cooperate with MMG whenever such a claim is filed against either of them.  This Subsection shall survive the expiration or termination of this Agreement for any reason.

f.      Physician agrees to submit to a drug and/or alcohol test if MMG or the Medical Center has reason to suspect that Physician is under the influence of drugs or alcohol or is engaging in any improper or unlawful act involving drugs or alcohol.

g.      Physician acknowledges that patients whom the Physician examines or treats at the Practice or at the Medical Center do not belong to the Physician, that such patients are not "owned" by any party, but that such patients are patients of the Practice, of MMG, or of the Medical Center.

Physician shall provide to MMG upon request any and all documents evidencing Physician's satisfaction of the above-listed representations and warranties.

6.      **Professional Fees & Billing.**

a.      <u>Third-Party Payors and Programs</u>.  Physician will accept payment as a participant in the Blue Cross and Blue Shield of Michigan, Medicare, and Medicaid third-party payor programs, and as a participant in any managed care, alternative health care delivery or direct contracting programs in which MMG or the Medical Center participates.  Physician will promptly complete at the request of MMG or the Medical Center prior to the Effective Date and during the term of this Agreement all applications and forms to ensure Physician's participation in any managed care, alternative health care delivery or direct contracting programs.  Participation in any managed care, alternative health care delivery or direct contracting programs is at the discretion of MMG. Physician that MMG or the Medical Center may add or remove such programs at any time during the term of this Agreement.

b.      <u>Right to Contract; Agency</u>.  Physician acknowledges and agrees that MMG is authorized to enter into contracts on behalf of Physician to participate in any third-party payor programs and any managed care, alternative health care delivery or direct contracting programs in which MMG participates. Physician agrees to be bound by all obligations under such contracts and to execute related documents as may be required or requested by MMG. Physician shall not enter into any contracts to provide health care services on an independent basis without MMG's prior written consent. In addition, Physician shall not independently join or participate in any physician hospital organizations (PHOs), integrated health care delivery systems, managed care organizations, health maintenance organizations (HMOs) or any other network of health care providers and organizations without MMG's prior written consent.

c.      <u>Billing</u>.  MMG or its designee shall have the sole and exclusive right to bill and collect all charges for services performed by Physician under this Agreement and, unless otherwise directed by MMG, Physician will not directly bill patients or third-party payors for any services performed by Physician under this Agreement. All

4                                                              DATE

MCL 0176

and collection for Physician's services under this Agreement. Any amounts paid to or received by Physician for services performed under this Agreement, including without limitation reimbursement from patients, third-party payors, or other sources, for or related to services shall belong to MMG and shall be paid to or endorsed over to MMG immediately.

7.    **Compensation**. In exchange for Physician's services under this Agreement, MMG will pay to Physician compensation in accordance with the compensation described in, and under the terms and conditions of, attached **Exhibit B**, and subject to MMG's then-current practices, policies, and procedures. All amounts payable to or for Physician under to this Agreement shall be subject to all applicable taxes and withholdings, in accordance with MMG's normal payroll practices. Physician agrees that any amounts owed to Physician by MMG, whether arising under this Agreement or any other agreement or arrangement between the parties, may be reduced at any time during or after the term of this Agreement by any amounts owed to MMG by Physician under this Agreement or under any other agreement or arrangement between the parties.

8.    **Benefits**. During the term of this Agreement, MMG will afford to Physician the standard health and welfare benefits package offered by McLaren, subject to applicable eligibility and waiting period provisions. Notwithstanding anything to the contrary contained in this Agreement, MMG may, in its sole discretion and at any time during the term of this Agreement, modify, amend, suspend, discontinue, or replace any benefits offered to employees of like classification as Physician, and any such change may affect the benefits afforded to Physician under this Agreement. Any description of benefits attached to this Agreement or otherwise provided to Physician is a summary only of such benefits. The benefits are specifically described in the policy, and the policy governs all benefits afforded to Physician.

9.    **Professional Liability Insurance**. During the term of this Agreement, MMG will arrange and pay the premium for professional liability insurance coverage for Physician for the services rendered by Physician within the scope of Physician's employment under this Agreement. Such coverage will be in amounts of at least of $200,000 per claim and $600,000 annually in aggregate, including tail coverage. Physician shall be required to meet the eligibility requirements of MMG's self-insurance or limited purpose insurance program, or any commercial insurance policy selected by MMG. Coverage shall not extend to liability arising from incidents occurring prior to or after Physician's employment with MMG or outside of the scope of Physician's employment under this Agreement.

10.    **Facilities, Equipment, Staff & Supplies**. MMG shall, subject to the availability of resources provide Physician with such facilities, equipment, staff and supplies as MMG deems necessary for Physician to carry out Physician's duties and responsibilities under this Agreement. Physician is not authorized to hire, fire, or discipline or change the compensation of any member of the staff of the Practice or to acquire for the Practice or for MMG any equipment or supplies. *Scribe (In Person, In Office) to be provided*

11.    **Termination**. This Agreement may be terminated as follows:

a.    At any time by written consent of both parties.

*180*

b.    By either party at any time, with or without cause, upon at least 180 days' prior written notice to the other party. In the case of termination by Physician or MMG under this Subsection 11b, unless waived by MMG, Physician shall continue to perform his or her duties under this Agreement for the 90 days following such notice of termination (the "**Notice Period**"). During the Notice Period, Physician is required to work the number of hours and according to the then-current schedule Physician would normally be required to work under this Agreement; and, unless approved by MMG in advance, Physician is not permitted to use paid time off during the

5

DATE

MCL 0177

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

fees generated from these billings shall belong to MMG, and Physician expressly and irrevocably transfers, assigns and otherwise conveys to MMG all right, title and interest of Physician in such fees.  Physician agrees to cooperate in furnishing information and performing acts that may be necessary to facilitate MMG's (or its designee's) billing

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

Notice Period. In lieu of providing ~~90~~ 180 days' advance notice, MMG may, in its sole discretion, provide the ~~90~~ 180-day notice and terminate Physician's employment effective immediately and pay Physician compensation to which Physician would be entitled if Physician had worked during the Notice Period.

c.    By either party upon written notice to the other party in the event the other party materially breaches this Agreement and fails to cure such breach within fifteen (15) days following receipt of written notice of such breach from the terminating party. If Physician commits a material breach of this Agreement and cure of the breach is not possible, then the notice will so inform Physician, will take place fifteen (15) days from Physician's receipt of written notice of such breach.

d.    By MMG immediately upon written notice to Physician, if MMG makes a good faith determination that Physician's conduct: (i) does not meet acceptable professional or ethical standards of the medical profession; (ii) is damaging to the business or reputation of MMG, the Medical Center, or of any McLaren subsidiary; (iii) is dishonest or fraudulent; or (iv) is jeopardizing, or is likely to jeopardize, patient health or safety.

e.    By MMG immediately upon (i) discovery that the Physician is misusing any controlled substance, and (ii) the failure of the Physician to seek assistance from the Michigan Health Professional Recovery Program or other treatment regime requested by MMG, within seven (7) days of being requested by MMG to do so. Such a request by MMG may be verbal and/or by telephone. As used in this Subsection 11e, the discovery that the Physician is misusing a controlled substance may be made through testing of the Physician or through any other means. The "misuse" of a controlled substance need not be in the form of dependence by the Physician and need not affect the Physician's performance of services under this Agreement.

f.    By MMG immediately upon written notice to Physician: (i) if Physician's license to practice medicine in the State of Michigan or DEA registration is suspended, revoked, restricted, terminated or not renewed; (ii) upon the denial, suspension, revocation, restriction, termination or non-renewal of Physician's medical staff membership or clinical privileges at a McLaren hospital or other facility; (iii) if Physician is arrested for or convicted of a felony or a misdemeanor; (iv) if Physician commits any act that constitutes unprofessional conduct under Applicable Laws; (v) if Physician commits any act which creates an offensive and/or disruptive work environment; (vi) if Physician is suspended or excluded from any government health care program; (vii) if Physician materially breaches Subsection 5e of this Agreement; or (viii) if Physician fails to disclose or misrepresents any material fact or circumstance concerning or related to Physician's qualifications, experience, prior conduct (whether prior to or after the Effective Date), or ability to carry out Physician's obligations under this Agreement.

g.    By MMG immediately upon written notice to Physician if Physician is unable, due to illness or disability, to competently perform substantially all of Physician's duties under this Agreement with or without a reasonable accommodation, for ~~ninety (90)~~ 180 days or more, consecutively or cumulatively, during any twelve (12) month period.

h.    By MMG immediately upon discovery that Physician has engaged in unauthorized appropriation from MMG or from the Medical Center of drugs. As used in this paragraph, the discovery that the Physician engaged in such unauthorized appropriation of drugs may be made through any means.

i.    Automatically upon the death of Physician.

12.    **Post-Termination Obligations.**

a.    Upon any termination of this Agreement, all rights and obligations of the parties shall cease except those rights and obligations that have accrued or expressly survive such termination. Termination of Physician's employment will not affect any liability or other obligation may have accrued prior to the date this Agreement expires or terminates (the "**Termination Date**"); provided, however, that all compensation and benefits due or

6

DATE

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

payable to Physician shall be subject to Physician's prior satisfaction of the post-termination obligations set forth in this Section. Unless otherwise approved by MMG, on the Termination Date, Physician shall return all property belonging to MMG, McLaren or any other McLaren subsidiary, including, but not limited to, electronic equipment, hardware and software (such as phones, laptop computers, and pagers); medical tools, equipment and supplies; office equipment, furniture and supplies; physician identification badges and keys; prescription pads; and Medical Records and all confidential and proprietary information (whether electronic or hard copy). If requested to do so by MMG, Physician shall assist MMG in ensuring that continuity of care for patients is maintained, which may include preparation of related notices to patients. Physician shall complete all Medical Records for services rendered under this Agreement by Physician prior to the Termination Date in the manner and within the timeframe required (except in the case of Physician's death or disability that prevents Physician from doing so). If Physician fails to complete such Medical Records within fifteen (15) days of Physician's last day of active employment under this Agreement, MMG may, in its discretion, withhold compensation due Physician and/or report Physician's failure to complete the Medical Records to appropriate licensing authorities. *Physician expressly acknowledges and agrees that following the Termination Date, MMG may, subject to Applicable Laws, withhold final compensation until Physician properly satisfies all post-termination obligations; and, further, MMG may set off all amounts, if any, owed MMG by Physician as of the Termination Date, against Physician's final compensation.*

b. Notwithstanding anything contained in this Agreement to the contrary, in the event Physician is indebted to MMG for any amounts otherwise due or for amounts due under this Agreement or under any other agreement between the parties, MMG may, to the extent permitted by Applicable Laws, offset any such amounts owed to MMG by Physician against any amounts owed by MMG to Physician.

13. **Restrictive Covenants**.

a. <u>Non-Competition</u>. Unless waived by MMG in writing, during the term of this Agreement and for a period of two (2) years following the termination of this Agreement for any reason whatsoever, whether by Physician or MMG, Physician shall not, directly or indirectly, practice medicine or provide professional medical services in any form or capacity (whether as an employee, employer, agent, consultant, independent contractor, owner, shareholder, investor, partner, member, or otherwise) , at any location within a radius of ███ miles of the *15* Practice(s) and which competes with services provided by MMG or the Medical Center. Distance will be measured using a straight line (i.e., GPS direct point to point) instead of road miles. *Except Won king In Pee*

b. <u>Non-Solicitation</u>. Unless waived by MMG in writing, during the term of this Agreement and for a period of two (2) years following the termination of this Agreement for any reason whatsoever, whether by Physician or MMG, Physician shall not, directly or indirectly, or through any individual, person or entity: (a) induce or attempt to induce, or assist any other party in inducing or attempting to induce away from his or her employment or association with MMG, any physician, independent contractor, agent or consultant of MMG who performs services for the Practice; (b) solicit, attempt to hire, or hire any person who at the time of termination was employed by MMG to perform services for the Practice, or who was employed by MMG to perform services for the Practice at any time that Physician performed services on behalf of MMG; or (c) solicit, induce or attempt to induce away, or assist any other party in soliciting, inducing or attempting to induce away from MMG any current patients of the Practice or any patients who were patients of the Practice at any time Physician performed services at the Practice.

c. <u>Acknowledgments of Physician</u>. Physician acknowledges that without Physician's agreement to comply with the covenants set forth in this Section 13, MMG would not have employed Physician or entered into this Agreement. Physician further acknowledges that the covenants contained in this Section 13: (i) are reasonable and necessary for the protection of MMG's reasonable competitive business interests; (ii) are essential elements of this Agreement; (iii) contain limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect MMG from unfair

DATE

MCL 0180

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

competition; (iv) are independent covenants (and that the existence of any claim by Physician against MMG, under this Agreement or otherwise, will not excuse Physician's breach of any covenant of Physician in this Section 13). Physician further acknowledges that in the event a court of competent jurisdiction determines that the length or scope of any of the restrictions contained in this Section 13 are unenforceable as written, Physician agrees to the reformation of such restrictions by the court to render such restrictions enforceable and provide MMG the maximum protection permitted under Applicable Law.

d.  **Reformation; Injunctive Relief.**  Physician acknowledges and agrees that any violation of the restrictions under this Section 13 would result in irreparable loss and injury to MMG. Physician, therefore, agrees that in the event of a breach or threatened breach of any of Physician's covenants under this Section 13, then in addition to any other remedies available to it, MMG shall be entitled to immediate preliminary and injunctive relief without the necessity of MMG proving actual damages or of posting a bond.

14.  **Confidentiality.**  Physician agrees to maintain in strict confidence and shall use and disclose only as authorized by MMG and as may be required in the performance of Physician's duties under this Agreement, all protected health information (under HIPAA), information of a competitively sensitive or proprietary nature, and all other information Physician is required to maintain as confidential under Applicable Laws or MMG or Medical Center policies that Physician receives, whether oral, written or electronic, in connection with this Agreement. Without limiting the generality of the foregoing, Physician shall maintain the confidentiality of any Medical Records, business and financial records, and matters or practices of MMG or of a Related Entity to which Physician shall have access or knowledge as a result of this Agreement; provided, however, Physician may use and disclose information: (i) to the extent required by an order of any court or other government authority, or (ii) as necessary for Physician to protect his or her interests in this Agreement, but in each case only after MMG and/or the Related Entity, as applicable, has been so notified and has had the opportunity, if possible, to obtain reasonable protection for such information in connection with such disclosure.  This provision shall survive the termination of this Agreement for any reason.

15.  **Section 409A of the Internal Revenue Code.**  To the extent applicable, it is intended that all of the benefits and payments under this Agreement satisfy, to the greatest extent possible and to the extent applicable, the exemptions from the application of Section 409A of the Internal Revenue Code (**"Section 409A"**) provided under Treasury Regulations 1.409A-1(b)(4), 1.409A-1(b)(5) and 1.409A-1(b)(9), and this Agreement will be construed to the greatest extent possible as consistent with those provisions. If not so exempt, this Agreement (and any definitions hereunder) will be construed in a manner that complies with Section 409A and incorporates by reference all required definitions and payment terms. For purposes of Section 409A (including, without limitation, for purposes of Treasury Regulation Section 1.409A-2(b)(2)(iii)), Physician's right (if any) to receive any installment payments under this Agreements (whether reimbursements or otherwise) will be treated as a right to receive a series of separate payments and, accordingly, each installment payment hereunder will at all times be considered a separate and distinct payment. MMG makes no representation that any or all of the payments described in this Agreement will be exempt from or comply with Section 409A and makes no undertaking to preclude Section 409A from applying to any such payment. Physician understands and agrees that Physician shall be solely responsible for the payment of any taxes, penalties, interest or other expenses incurred by Physician on account of non-compliance with Section 409A.

16.  **Governing Law; Venue.**  The validity, interpretation and effect of this Agreement shall be governed by the laws of the State of Michigan, without regard to any choice or conflicts of laws principles. Each party specifically consents to Michigan as the proper jurisdiction for all legal actions arising directly or indirectly from this Agreement and agrees that the state or federal courts located in Michigan shall be the exclusive forum and venue for any such action.

17.  **Statute of Limitations.**  Any claims, lawsuits, causes of action, counterclaims, grievances, complaints and demands ("Claim") against MMG or a Related Entity arising under or in connection with this

DATE

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

~~Agreement must be filed with a court of proper jurisdiction within (a) six (6) months of the event(s) giving rise to the claim, or (b) the time limit specified by statute, whichever is shorter. If a Claim is not properly filed within this time period, Physician shall be forever barred from filing and maintaining such action. Physician agrees that by executing this Agreement Physician is waiving his or her right to a longer statute of limitations that may apply under Applicable Law. This Section 17 shall apply to any Claim against MMG, a Related Entity, and their respective former, current and future officers, directors, Physicians, agents, representatives, successors, and assigns.~~

18.    **Entire Agreement; Amendments**.  This Agreement, including any exhibits, schedules or other attachments (the terms of which are incorporated in this Agreement by reference), contains the entire agreement between the parties with respect to the subject matter of this Agreement and supersedes any prior oral or written understandings and agreements. This Agreement may only be amended or supplemented by an agreement in writing signed by each of the parties on or after the date of this Agreement.

19.    **Severability**.  If any term, covenant, condition or provision in this Agreement (a **"Provision"**) is illegal, or the application of a Provision, to any person or in any circumstance shall to any extent, be invalid or unenforceable, as finally adjudicated by a court of competent jurisdiction, the remainder of this Agreement, or the application of such Provision to persons or in circumstances other than those with respect to which it is held invalid or unenforceable, shall not be affected by such Provision, and each other Provision shall be valid and enforceable to the fullest extent permitted by Applicable Law.

20.    **No Waiver**.  The failure of either party to strictly enforce any Provision shall not be construed as a waiver of such Provision or as excusing the defaulting party from future performance. Any waiver of a Provision must be in writing and signed by a duly authorized representative of the party against whom enforcement of such waiver is sought.  One or more waivers of the same Provision shall not be construed as a waiver of a subsequent breach of that or any other Provision.

21.    **Assignment; Binding Effect**.  Neither party to this Agreement may assign its rights, duties, or obligations under this Agreement without the prior written consent of the other party, except that MMG may assign this Agreement to a Related Entity without Physician's consent.  This Agreement is enforceable only by the parties and their successors in interest by virtue of an assignment which is not prohibited under this Agreement, and there is no intention, express or otherwise, to benefit or create any rights or interests for any person or entity other than the parties.

22.    **Corporate Compliance Program**.  MMG has in place a Corporate Compliance Program (**"Compliance Program"**), the goal of which is to ensure that Physician complies with all Applicable Laws.  The Compliance Program focuses on risk management, the promotion of good corporate citizenship, including the commitment to uphold a high standard of ethical and legal business practices, and the prevention of misconduct. Physician acknowledges MMG's commitment to corporate compliance and agrees to act in accordance with the underlying philosophy of the Compliance Program.

23.    **Remedies**.  In the event of a material breach of this Agreement, the parties agree that equitable relief, including injunctive relief and specific performance, shall be appropriate remedies in addition to remedies at law. All rights, remedies and benefits provided to the parties under this Agreement shall be cumulative, and shall not be exclusive of any such rights, remedies and benefits, or of any other rights, remedies and benefits provided by law.

24.    **Notices**  All notices, requests, demands and other communications required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been duly given when (a) delivered personally, or (b) mailed by certified or registered mail, return receipt requested and postage prepaid, (c) sent by nationally recognized overnight courier, with proof of delivery requested and charges prepaid, or by e-mail, to the addresses set forth below.  The parties may change their respective addresses for notice purposes under this

MCL 0182

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

Agreement by giving notice of such change in accordance with the terms of this Section. If the address below for Physician is ineffective to reach Physician, or if the space below is blank, MMG may notify Physician at the address last provided to MMG or to the Medical Center for any purpose.

| | |
|---|---|
| *If to Physician*: | *If to MMG:* |
| **Charles Christensen, D.O.** | McLaren Medical Group |
| **3697 Port Austin Rd.** | G-3235 Beecher Road |
| **Port Austin, MI 48467** | Flint, Michigan 48532 |
| **Charlie.Christensen@mclaren.org** | Attention: President & CEO |

25.    **Signatures**. This Agreement may be signed in any number of counterparts, each of which shall be treated as an original, but all of which, collectively, shall constitute a single instrument. Facsimile or electronic images of signatures shall be effective to the same extent as original signatures.

The parties have entered into this Agreement on the date(s) indicated below.

**MMG**                                                        **Physician**
McLaren Medical Group

By:_____                 By:_____
Name: Chad Grant                                        Name: **Charles Christensen, D.O.**
Its: Executive Vice President, Chief Operating Officer
     McLaren Health Care Corporation

10                                                                              DATE

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

**Exhibit A**
**McLaren Medical Group**
**Duties**

1. **Specialty & Board Certification.** Physician shall be duly qualified to practice medicine in the Specialty and shall be board eligible or board certified in **Pediatric Medicine.**

2. **Practice Location.** The Practice will be located at **1060 S. Van Dyke Rd., Bad Axe, MI 48413,** and such other and/or additional location(s) as MMG may, in its discretion, designate from time to time.

3. **Medical Practice.** Physician's employment shall be considered **1.0 full time equivalent (FTE) units.** Physician is required to devote Physician's best efforts and such time performing direct patient care hours and other duties as necessary to fulfill Physician's obligations under this Agreement. Direct patient care hours mean time spent at the Practice or the Medical Center providing, or being available to provide, in-person care to patients. Hours may include evening and weekend hours at the Practice or the Medical Center and may include on-call services.

4. **Other Duties and Performance Standards.**  DeFine

   a. Physician shall always:

      i. Contribute to a workplace environment that is free from violence, harassment, intimidation, and is conducive to maintaining the highest professional and ethical standards.

      ii. Treat patients, family members, visitors, members of the healthcare team and facility employees in a respectful and dignified manner; and

      iii. Acting reasonably and in good faith, work with other members of the healthcare team to resolve conflicts or address lapses of decorum when they arise.

   b. In addition, Physician shall always:

      i. Perform all services necessary for and devote best efforts to the proper conduct of the Practice.

      ii. Provide medical evaluation, direction, consultation, and follow up care for patients of the Practice as appropriate in the Specialty. If Physician is a specialist, Physician must provide follow up care to patients of the Practice admitted for inpatient care.

      iii. Provide on call coverage as is appropriate and customary according to the Medical Center's Medical Staff Bylaws and to ensure the Medical Center has level of patient care required to satisfy the Medical Center's EMTALA obligations.

      iv. If requested by MMG, serve as supervising physician for physician assistants and other mid-level providers employed or engaged by MMG.

      v. Provide leadership for clinic and community relations and maintain active liaison with members of the medical community through Medical or Professional Staff membership and participation in Medical or Professional Staff activities of the Medical Centers.

         A. Contribute to developing, planning, organizing, and directing MMG's Specialty-

DATE

MCL 0184

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

related programs.

    B.    Represent MMG in meetings and with professional groups regarding Specialty-related and Practice-related matters.

vi.    Participate in physician and non-physician education and teaching programs of MMG as reasonably requested by MMG. — *Need To Define*

vii.    Participate in MMG's performance evaluation processes to validate Physician's professional capabilities, productivity, and quality. *+ MMG to Also Validate Capability + Productivity + Quality*

viii.    Accept all patients who present themselves to the Practice for treatment or who are referred to Physician, regardless of such patients' medical insurance, ability to pay, or participation in any managed care or alternative health care delivery programs.

ix.    Be present and ready to see patients for their scheduled appointments.

x.    Systematically assess patients' health status, arrive at appropriate diagnosis(es), and implement care plan for effective clinical outcomes.

    A.    Consider thorough range of treatment/preventive options and arrive at a recommended course of action that is age appropriate, culturally appropriate, realistic, and attainable.

    B.    Appropriately manage patient care and health status following initiation of treatment/preventive plan and monitor and adjust as warranted.

    C.    Communicate effectively with patients and family so that they understand the diagnosis, treatment plans and need for follow-up care.

    D.    Educate and encourage patients to become active participants in their own health care related behavior and provide patient education materials for use in encouraging wellness.

    E.    Seek consultation and advice by providing adequate information to consulting physicians and communicate requests effectively or respond to such requests from the referral source in a courteous, professional, and timely manner.

    F.    Document according to established guidelines to facilitate ongoing quality of care in a timely manner.

    G.    Perform appropriate medical procedures within scope of practice as defined by MMG and Medical Center credentialing and privileging processes.

    H.    Delegate direct and indirect patient care activities to appropriate personnel.

    I.    Respond appropriately to emergent situations.

    J.    Review and follow-up on complaints and concerns about medical care.

    K.    Assure continuity of care for patients.

DATE

MCL 0185

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

xi.   Contribute to effective and efficient practice management policies and practices that support patient access to medical care.

  A.   Collaborate in establishing production numbers to be budgeted and achieve targeted goal.

  B.   Support appropriate billing for professional service through timely documentation and maintaining adequate knowledge of MMG billing policies and procedures.

  C.   Respond to telephone calls in a timely fashion. — *During Work Hours.*

xii.  Manage patient care through appropriate use of available resources.

  A.   Appropriately prescribe and order ancillary services.

  B.   Utilize the MMG referral network appropriately.

  C.   Promote the appropriate length of stay for patients.

xiii. Participate in quality assurance, peer review, risk management, and utilization programs and initiatives.

xiv.  Perform such additional services as MMG may reasonably request from time to time.

DATE

MCL 0186

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

## Exhibit B
## McLaren Medical Group
## Compensation

This Exhibit outlines the MMG Primary Care Physician Compensation Model pursuant to which Physician will be compensated for Physician's services under this Agreement. Compensation will be measured on a calendar year basis. If the Effective Date of this Agreement is other than January 1st, all rates and compensation payable under this Exhibit will be based upon the pro-rata portion of the calendar year from the time Physician commenced employment under this Agreement to the next January 1. MMG's compensation policies and procedures will be reviewed annually and may, in MMG's sole discretion and without Physician's consent, be modified as of January 1 of each calendar year during the term of this Agreement, which modifications may include without limitation, changes to the rates, metrics, and benchmark sources referenced below.

Physician's aggregate compensation must be consistent with fair market value and commercially reasonable. If, during the term of this Agreement, MMG reasonably and in good faith determines Physician's then-current compensation is not consistent with fair market value and/or is not commercially reasonable, then MMG will have the right to make appropriate adjustments to Physician's compensation to ensure compliance with Applicable Law.

Aggregate compensation under this Exhibit will be calculated based on three components: 1) wRVU productivity compensation, 2) a value-based incentive (VBI), and 3) other cash compensation, all as described below.

### 1. wRVU PRODUCTIVITY COMPENSATION

'All professional services personally performed by Physician pursuant to this Agreement (including both procedures and evaluation and management (E&M) services) shall be assigned Work Relative Value Units (**wRVUs**) each calendar year. No wRVUs shall be assigned to Physician for incident-to services or services performed by others. The wRVUs shall be determined based on the Physician Fee Schedule ("**PFS**") published by the Centers for Medicare and Medicaid Services ("**CMS**"). Regardless of whether changes to the PFS are made by CMS in a given year, the year of the PFS used to determine wRVUs must correlate with the most relevant published market data available. MMG will, in its sole discretion, determine the published year of the PFS used for the next calendar year to ensure the market data align with most appropriate PFS published. The specific survey utilized by MMG will be reviewed and may, in MMG's sole discretion, be updated annually.

Under the wRVU Productivity Compensation Component, Physician will receive an amount equal to personally performed wRVUs posted during a calendar year, multiplied by a base rate per wRVU specific to Physician's specialty ("**Base Rate**"). Market data from the surveys approved annually by MMG will inform the Base Rates per wRVU used in the calculation of the wRVU Productivity Compensation Component. Base Rates per wRVU will be determined by MMG at the beginning of each calendar year.

Stated as a formula:

(Total wRVUs x Base Rate per wRVU) = total compensation under the wRVU Productivity Compensation Component.

The examples below are for illustrative purposes only and do not reflect actual performance or compensation under the Agreement.

Example 1: If Physician personally produces 5,500 wRVUs in a year, and the Base Rate per wRVU is set at $46.25 for the year, total compensation under the wRVU Productivity Compensation Component shall be $254,375, calculated as follows:

$$(5,500 \text{ X } \$46.25) = \$254,375$$

14                                                                                        DATE

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

Example 2: If Physician personally produces 4,500 wRVUs in a year, and the Base Rate per wRVU is set at $46.25 for the year, total compensation under the wRVU Productivity Compensation Component shall be $208,125, calculated as follows:

$$(4,500 \times \$46.25) = \$208,125$$

**2. VALUE-BASED INCENTIVE (VBI) COMPENSATION**

Physician may earn a VBI compensation payment (**"VBI Payment"**) by achieving specific quality or value-based metrics. In a given calendar year, Physician will be eligible to earn a maximum VBI Payment (a **"VBI Compensation Opportunity"**). Actual maximum VBI Compensation Opportunity amounts will be determined by MMG effective as of the beginning of each calendar year and included in the MMG annual policy. The VBI Compensation Opportunity will be clinically FTE adjusted.

Eligibility to earn the maximum VBI Payment will be determined annually based on an established threshold, which is typically the market median wRVU of the most recently published or most relevant published survey data for Physician's specialty. Physician will be eligible for a VBI Payment only if Physician is employed under this Agreement at the time MMG issues VBI Payments to MMG physicians, which shall be within a reasonable time after MMG receives all data required to measure achievement of the VBI metrics by MMG physicians.

The metrics and calculation associated with earning VBI compensation are described in detail on the VBI Calculation Scorecard, which is included in the MMG annual Primary Care Model policy. Each quality or value-based metric may be comprised of several measurement criteria. MMG will review VBI metrics annually in consultation with members of the Primary Care Clinical Council. MMG may, in its sole discretion, update or change the quality metrics, measurement criteria, and/or data sources. See the policy for specific metrics and rates in effect during a given calendar year. *Please provide in Contract.*

**3. OTHER CASH COMPENSATION**

- ***APP Supervisory Compensation:*** Physician may earn an additional compensation for the direct supervision of advanced practice providers ("APPs") at an annual flat rate as set by MMG for the calendar year. For purposes of this payment, APPs are defined as Nurse Practitioners, Midwives, and Physician Assistants.

- ***Other Cash Compensation:*** Physician may be eligible for other cash compensation including, but not limited to, pay for leave, jury duty, bereavement, student teaching, medical director services, and other non-clinical services in accordance with applicable MMG policies and/or contractual arrangements then in effect. *Cu11*

**DRAW:** During the calendar year, Physician will receive compensation each pay period equal to a percentage (set by MMG) of the prior year's earnings excluding VBI payments (i.e., wRVU Productivity Compensation and Other Cash Compensation) divided by the number of pay periods in the calendar year (the **"Draw"**).

MMG may, in its discretion and consistent with MMG's then-current compensation policies, procedures and practices, adjust the Draw at any time during the term of this Agreement. MMG will provide Physician with written notice of any changes in the Draw and the date those changes will become effective.

***Draw Reconciliation:*** At the end of each three-month period (quarter) in a given calendar year, Physician's actual wRVU production and any Other Cash Compensation through the quarter will be evaluated. If Physician's actual wRVU production plus Other Cash Compensation earned in a given quarter would

15                                                                                     DATE

MCL 0188

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

otherwise generate compensation in excess of the Draw payments Physician earned during that quarter, Physician shall receive a draw reconciliation payment equal to the difference (a "Reconciliation Payment"). If Physician's actual wRVU production and Other Cash Compensation during a given quarter would otherwise generate compensation less than the Draw payments, Physician will not be eligible for a Reconciliation Payment.

DATE

MCL 0189

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

**Exhibit C**
**McLaren Medical Group**

$ 240,000 Guaranteed Salary

1. **Compensation**

2. During the first 24 months of the Agreement, the Physician shall be paid the following:

3. $230,00.00 payable in equal biweekly installments (**"Salary Installments"**) per consecutive 12-month period.

4. Salary Installments include any biweekly payments made to the Physician for paid time off. The Salary Installments shall be subject to all applicable taxes and withholdings, in accordance with MMG's normal payroll practices.

5. Following the first 24 months of this Agreement, the Physician will be paid in accordance with Section 7, "Compensation." The change in compensation from Salary Installments will take place at the beginning of the next calendar quarter after the first 24 months. For the time period between the end of first 24 months and the beginning of the next full calendar quarter, the Physician will be paid a prorated amount of the annual Salary Installments.

6. The Physician may elect to transition to the compensation described in Section 7, "Compensation," prior to the end of the first 24 months. To do so the Physician must provide at least 60 days' written notice. The change in compensation from Salary Installments will take place at the beginning of the first full calendar quarter following the 60-day period of the notice. When the Physician elects to transition to the compensation described in Section 7, "Compensation," prior to the end of the first 24 months, the Physician cannot transition back to "Salary Installments" described above.

DATE

MCL 0190

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

Christensen-Evergreen-2023

MMG
Primary Care Physician Compensation Model
Annual Updates
Calendar Year 2023

I. SURVEY SOURCES
- SullivanCotter's Physician Compensation and Productivity Survey
- American Medical Group Association's (AMGA) Medical Group Compensation and Productivity Survey
- Medical Group Management Association's (MGMA) Physician Compensation and Production Survey

II. BASE wRVU Compensation Rate

Specialty Specific Market Median Total Cash Compensation ("TCC") divided by Specialty Specific Market Median wRVU's times 83%

|  | Base wRVU Compensation Rate | CCT Market (Central, Caro, Thumb) |
|---|---|---|
| Family Medicine | $44.78 | $47.24 |
| Internal Medicine | $47.86 | $50.49 |
| Pediatric Medicine | $41.26 | $43.53 |

*This is Un Acceptable* [handwritten]

III. Value Based Incentive (VBI) measures

Approximately 12% of Specialty Specific Market Median Total Cash Compensation ("TCC")

wRVU Threshold

Family Medicine – 4,962

Internal Medicine – 4,823

Pediatric Medicine – 5,105

Maximum Opportunity - $40,000

See VBI Scorecard attached for other annual measures

IV. APP Supervisory Compensation

Physician may earn an additional payment for the direct supervision of Advanced Practice Providers (APPs) at the annual rate set by MMG for the calendar year. For purposes of this payment, APPs are defined as Nurse Practitioners, Midwives, and Physician Assistants. The amounts for 2023 are as follows:

- $6,000 per APP FTE supervised where the APP is in a non-Rural Health Clinic; or
- $10,000 per APP FTE supervised where the APP is in a Rural Health Clinic.

V. Draw: Physician will receive compensation each pay period equal to eighty percent (80%) of the prior year's earnings excluding VBI payments (i.e., wRVU Productivity Compensation and Other Cash Compensation) divided by the number of pay periods in the calendar year.

18                                                           DATE

MCL 0191

DocuSign Envelope ID: 28E81850-2667-4FAD-9CE0-743FB2B0BC19

## ON-CALL SERVICES ADDENDUM

This On-Call Services Addendum (this "Addendum") is effective as of October 1, 2023 between McLaren Medical Group, a Michigan nonprofit corporation ("MMG"), and **CHARLES CHRISTENSEN, D.O.** ("Physician").

### BACKGROUND

A.   The Physician is employed by MMG through a certain employment agreement dated October 1, 2023 (the "Employment Agreement"). Capitalized terms not otherwise defined in this Addendum shall have the meanings ascribed to them in the Employment Agreement.

B.   Under the Employment Agreement, the Physician provides on-call coverage each month as is ~~appropriate and customary for MMG's physician employees ("Required On-Call Coverage").~~ 10 DAys Per Month.

C.   ~~MMG desires the Physician provide additional on-call coverage each month ("Additional On-Call Coverage" and, together with Required On-Call Coverage, "On-Call Coverage"), and the Physician desires to provide such coverage.~~

Therefore, the Parties agree as follows:

### AGREEMENT

1.   **ON-CALL COVERAGE.** The Physician shall provide On-Call Coverage in accordance ~~with a schedule set forth by the Medical Center(s).~~ 10 DAys /m.Th.

2.   **COMPENSATION.** For ~~Additional~~ On-Call Coverage provided by the Physician, the Physician shall be compensated at a rate of $?00.00 for each 24-hour weekday shift (Monday-Friday from 7:00a.m. to 7:00 p.m.) and $?00.00 for each weekend shift (Saturdays and Sundays from 7:00 a.m. to 7:00 p.m.). Additional On-Call Coverage for which the Physician will be compensated shall be equal to the difference between On-Call Coverage and Required On-Call Coverage provided in the same month.

3.   **TERM & TERMINATION.** Unless otherwise terminated by MMG in accordance with this paragraph, this Addendum shall terminate upon the termination or expiration of the Employment Agreement. MMG may terminate this Addendum for any or no reason upon 10 days' notice to the Physician.

4.   **GENERAL PROVISIONS.** This Addendum is subject to all applicable terms of the Employment Agreement. All terms and conditions of the Employment Agreement remain in full force and effect. In the event of conflict between the Employment Agreement and this Addendum, this Addendum will control. This Addendum may be executed in multiple counterparts, each of which will be deemed an original, and all of which together will constitute one and the same instrument.

By their signatures below, the undersigned, each being an authorized representative of the applicable party, agree that the terms of this Agreement will be effective as of the Effective Date.

**MCLAREN MEDICAL GROUP**                    **PHYSICIAN**

_____              _____

Chad Grant                                   CHARLES CHRISTENSEN, D.O.
Executive Vice President, Chief Operating Officer
McLaren Health Care Corporation

                                                                    DATE

1

MCL 0192