# EXHIBIT 2

**REBUTTAL TO PLAINTIFF'S EXHIBIT 9**

| Plaintiff's Version of Question to Carla Henry | Plaintiff's Version of Ms. Henry's Response | <u>Actual</u> Question/ <u>Actual</u> Response | Citation |
|---|---|---|---|
| Have you taken classes on learning disabilities? | No | Q.  Have you . . . taken any classes . . . about working with employees who have learning disabilities?<br><br>A.  Not Specifically | ECF No. 31-5, PageID. 707:17-22 |
| Does HR offer resources to support employees with disabilities? | Not sure | A.  We have an employee assistance program that offers many different resources.<br><br>Q. Does that support employees with disabilities . . . theoretically?<br><br>A.  I can't . . . speak to the specifics, but they offer many different resources. | Id., PageID. 708:15-23 |
| Do you agree that for the accommodation to work it has to be effective for that person? | I don't know how you would define "Effective" for that person | A. I don't know how you would define "Effective for that person."<br><br>Q. It has to be helpful to them to be able to do their job.<br><br>A. I would say it has to meet the needs that are documented through the process. | Id., PageID. 710: 18-25-PageID.7 11:1 |

| Plaintiff's Version of Question to Carla Henry | Plaintiff's Version of Ms. Henry's Response | **Actual** Question/ **Actual** Response | Citation |
|---|---|---|---|
| Is it your responsibility to make sure that accommodations are in fact effective for your disabled employees? | No | A. My responsibility, no.<br><br>Q. Whose is it?<br><br>A. It's part of the -- through the process and the request that comes from a medical professional from that request that outlines what is needed for that employee, that's what we're looking at. **It's not for HR to determine what the accommodation need is. We look at what is provided to determine if that is a reasonable accommodation need**. | ECF No. 31-5, PageID.711:11-19 |
| Did you or any of your staff contact Doctor Christensen to review his dyslexia diagnosis file? | "No" | A. No.<br><br>Q. Why not?<br><br>A. Not that I'm aware of. **Because it's not HR's responsibility or to interpret somebody's medical file.** | ECF No. 31-5, PageID.721:1-4 |
| What is ScribeAmerica? | "It's a program. …I don't know the details." | Q. What is ScribeAmerica?<br><br>A. It is a program and an organization or a company that provides scribe services.<br><br>Q. It's a computer program, isn't it?<br><br>A. I don't know the details | ECF No. 31-5, PageID721:17-21 |

2

| Plaintiff's Version of Question to Carla Henry | Plaintiff's Version of Ms. Henry's Response | <u>Actual</u> Question/ <u>Actual</u> Response | Citation |
|---|---|---|---|
| Do you have documentation proving that someone did engage with him about ScribeAmerica? | "No." | Defendant attaches Exhibit 1 as documentation.  ECF No. 33-9, PageID.1478 is also documentation.  Carla Henry is not included on these emails, so she would have been unaware of them. | ECF No. 33-9, PageID.1478 |
| Do you believe HR has to ensure accommodation is effective for specific needs? | We are not obligated to look at "what the employee provides directly." | A. We're obligated to review and take into consideration **what a medical professional has provided on behalf of that employee**, not what the employee provides directly. | Id., PageID.724:2-8 |
| Did Dr. C. have a contract with Mclaren stipulating disability accommodation? | Yes | Q. And you would agree with me that that contract does include dictation, a scribe, and that was the accommodation provided to him by Huron Medical, correct?<br><br>A**. I don't recall if it had that detail in it.** | Id., PageID.726:7-13 |
| Do you take care of discrimination complaints? | Yes | Q. Are you someone in your capacity **that an employee can go to** with an complaint if he or she believes he's -- he or she is being discriminated against?<br><br>A. Yes. | Id., PageID.730:18-22 |

3

| Plaintiff's Version of Question to Carla Henry | Plaintiff's Version of Ms. Henry's Response | <u>Actual</u> Question/ <u>Actual</u> Response | Citation |
|---|---|---|---|
| Do you take care of retaliation complaints? | Yes | Q. Are you someone **an employee can go to** with a complaint if he or she believes they're being retaliated against for having complained of discrimination?<br><br>A. Yes. | Id., PageID.731:1-4 |
| Do you have documents supporting the investigation? | I don't know | Q. Is there a file or documentation to support what you're saying?<br><br>A. I don't know.<br><br>Q. Was a report generated?<br><br>A. **That would have to come from Michele**.<br><br>Q. You would not get a copy?<br><br>A. I don't recall.<br><br>Q. **<u>Do you normally get copies of reports, investigation reports?</u>**<br><br>A. **<u>No.</u>**<br><br>Q. Where are they maintained if they exist?<br><br>A. By the person who completed the investigation, so by the HR person that completed the investigation. | ECF No. 31-5, PageID.733:6-18 |

4

| Plaintiff's Version of Question to Carla Henry | Plaintiff's Version of Ms. Henry's Response | **Actual** Question/ **Actual** Response | Citation |
|---|---|---|---|
| Was a report generated? | I don't recall | Id. | Id. |
| Do you have any documentation proving any dialogue? | No | Q Do you have any documentation that I haven't -- **hasn't been provided** that would corroborate that statement?<br><br>A No. | Id., PageID.738:21-23 |
| Did he complain about discrimination and hostility? | He complained of not having a scribe and **how it impacted his work**. | Q. In this meeting, did Doctor Christensen complain again about being discriminated against and subjected to a hostile work environment based on his learning disability?<br><br>A. As I recall, **he complained about not having a scribe and feeling that was impacting his ability in the clinic**. That is, again, when I reiterated and, you know, discussed that we had a policy, that we had a process, to be able to accommodate and review the request that he had for accommodations. | ECF No. 31-5, PageID.744:11-20. |
| Did you investigate his complaints? | I asked someone else to do it. | Q. Other than giving him that counsel, did you do anything else? Take any other action regarding his complaint of discrimination?<br><br>A. I had worked, again, with Michele Nichols in HR to make sure that we had followup with him regarding those concerns. | Id., PageID.744:21-745:1 |

5

| Plaintiff's Version of Question to Carla Henry | Plaintiff's Version of Ms. Henry's Response | Actual Question/ Actual Response | Citation |
|---|---|---|---|
| Can you prove the investigation took place? | No | Q. Is there any email or documentary evidence that you can point me to to substantiate what you just said?<br><br>A. **Not that I have**. | Id., PageID.745:1-4 |
| Did you investigate his retaliation complaint?<br><br>Did you do what your policy mandates? | No | Henry was questioned about Plaintiff's claim that Defendant's response to finding gun paraphernalia in his office was in retaliation for his complaints.  Henry testified that the investigating whether the gun paraphernalia belonged to Plaintiff was an investigation into whether Defendant's response was based on legitimate, non-retaliatory reasons:<br><br>Q. So did you just dismiss his claim of retaliation outright?<br><br>A. I disagreed with it.<br><br>Q. I know you disagreed with it. Did you just dismiss it?<br><br>A. Define "Dismiss."<br><br>Q. Well, did you do what your policy mandates that you do and have an investigation?<br><br>A. **We were actively investigating their findings**.<br><br>Q. No. I'm talking investigating his claim of retaliation.<br><br>A. No. | ECF No. 31-5, PageID.765 |

IBUTZEL\000161884\0003\201284961.v1-4/14/26

| Plaintiff's Version of Question to Carla Henry | Plaintiff's Version of Ms. Henry's Response | <u>Actual</u> Question/ <u>Actual</u> Response | Citation |
|---|---|---|---|
| Were you aware of the plan to remove Dr. C. from his job long before? | Yes | Q. Isn't it true that there had been a plan in place to get rid of Doctor Christensen long before the issue with the bike battery and the stuff in his office?<br><br>A. I don't know that I would call it a plan to replace, but there was definitely concerns about his productivity. . . .<br><br>Q. He [VP of Operations] writes on October 4th that there was a -- "Would this be to augment/transition from Christensen as current Bad Axe peds?" Sarah Frye then replies "The goal is to move away from Christensen." Down another line I have highlighted "The full-time physician position is to replace Christensen." So isn't it true that almost a year before he was terminated for cause there is a movement, a plan, to remove him from his job?<br><br>A. Based upon that email, yes. | ECF No. 31-5, PageID.776. |
| Was Ms.Henry aware of Dr. C.'s original agreement with McLaren? | Yes | Ex. 55 is an email confirming that Plaintiff's original employment agreement **did not include a provision about a scribe** and that "the scribe information **will continue to not be included** in the employment agreements going forward. | ECF No. 34-5, PageId.1565 |

7

| Plaintiff's Version of Question to Carla Henry | Plaintiff's Version of Ms. Henry's Response | **Actual** Question/ **Actual** Response | Citation |
|---|---|---|---|
| Was she aware that "Scribe information will continue to not be included in the employment agreements going forward." | Yes | Ex. 55 is an email confirming that Plaintiff's original employment agreement **did not include a provision about a scribe** and that "the scribe information **will continue to not be included** in the employment agreements going forward. | ECF No. 34-5, PageId.1565 |
| "Is there some cognitive element, ADA, etc., we are recognizing for him?" | No response | Henry did respond to this email from Joel Keiper, and her response was: "Let's discuss please." | ECF No.34-11, PageID.1571 |

8