# EXHIBIT 3

| Citation | What Plaintiff Claims the Testimony/Exhibit Stated | What Testimony/Exhibit **Actually Stated** |
|---|---|---|
| Ex. 27 [ECF No. 33-2, PageID.1466-67] | Contract documents explicitly include "Scribes: Accommodation Request," stating accommodation "will be maintained and reviewed by HR." This reflects formal recognition of disability-based accommodation during contract negotiations. | Email is evidence that Plaintiff was required to make his request for accommodation with Human Resources. The "compact" was not part of Plaintiff's employment agreement, never signed by Defendant, makes no reference to a scribe being a reasonable accommodation to his alleged disability, and acknowledges that the scribe is not guaranteed. [ECF No. 33-2, PageID.1466-67; ECF No. 32-7, PageID.1107]. |
| Ex. 27 [ECF No. 33-2, PageID.1466-67] | Attached updated employment agreement **including an operational compact for use of a scribe** in outpatient documentation. | The "compact" was not part of Plaintiff's employment agreement, never signed by Defendant, makes no reference to a scribe being a reasonable accommodation to his alleged disability, and acknowledges that the scribe is not guaranteed. [ECF No. 33-2, PageID.1466-67; ECF No. 32-7, PageID.1107]. |
| Ex. 30 [ECF No. 33-5, PageID.1472] | "Dr Christensen from Peds is a challenge because he relies on his scribe." | In these emails, Whiting and Rates are discussing the timeline for gathering information to complete a Data Collection Template, and Whiting notes that it may take longer to receive Plaintiff's information "because he relies on his scribe." [ECF No. 33-5, PageID.1472]. Whiting is not saying that Plaintiff's reliance on a scribe is a problem. |
| Ex. 31 [ECF No. 33-6, Page ID.1473] | Notes Dr. Christensen's assigned scribe and discusses **replacement; proposes alternative** ("Speke") knowing he may " **push back** ." | Email refers to **part-time medical assistant** who "runs our VFC **and also scribes** for Dr. Christensen." The focus of the email is not replacing this employee so that there is a new scribe for Plaintiff; it is on fully staffing the practice with medical assistants. |

**REBUTTAL TO PLAINTIFF'S EXHIBIT 44**

| Citation | What Plaintiff Claims the Testimony/Exhibit Stated | What Testimony/Exhibit **Actually Stated** |
|---|---|---|
| Ex. 99, p. 17:2-6 [ECF No. 34-49, PageID.1744]. | MMG: "the challenges you have with the disability, the known disability you have, and trying to make that work with the scribe service functionally. I hear that loud and clear." | Pinelli is not admitting that Plaintiff has a disability; he is repeating what Plaintiff told them after he commandeered the meeting Pinelli called to discuss Plaintiff's relationship with his staff.  In fact, the very next thing Pinelli says is: ". . . if I could sort of flip . . .the focus just a little bit.  Aside from that . . . the scribe issue . . . the theme that I'm hearing from folks on the staff . . . it came specifically from that meeting but they were more overarching themes of concerns, had to do with things such as, comments . . . that you will only talk to Desiree, your medical assistant, sort of leaving out any others . . . others feel like if there's something that needs to be done, a phone call, an immunization, if Desiree's not available then no one else is able . . . you don't approach others, so that's one. And two, the tenor of that meeting sort of summarized a theme of sort of folks feeling intimidated, maybe at the raised voice, the way that conversation went, the interactions with that." [ECF No. 34-49, PageID.1744]. |
| Ex. 37 [ECF No. 33-12, PageID.1486] | Acknowledges Plaintiff "mentioned the need of hiring a scribe" and that concern must be addressed. | Plaintiff glosses over the context in which this statement was made.  HR is notifying McLaren's Senior Director of Operations that "it appears there is an issue around Dr. Christensen not communicating with staff, except Deziree Mazure and when she's not available he is not communication & providing patient information to anyone.  There is also staff's concern that Dr. Christensen comes across to them as being angry and argumentative."  [ECF No. 33-12, PageID.1486] |

| Citation | What Plaintiff Claims the Testimony/Exhibit Stated | What Testimony/Exhibit **Actually Stated** |
|---|---|---|
| Ex. 39 [ECF No. 33-14, PageID.1488] | States organization has "committed scribe resources " to Dr. Christensen. | Plaintiff omits that part of the citation explaining that Defendant has not promised that Plaintiff would always have a scribe available.  The complete citation is: "The organization has committed scribe resources to Dr. Christensen <u>as staff are available</u>. The clinical staff have been completing his scribe responsibilities; there is not a separate service used at this time." |
| Ex. 38 [ECF No. 33-13, PageID.1487] | "If he had a scribe it would resolve his issues. " | Bryant is not relaying her personal opinion; she is repeating Plaintiff's position:  "<u>He apparently made the comment that</u> if he had a scribe it would resolve his issues." [ECF No. 33-13, PageID.1487] |
| Ex. 52 [ECF No. 34-2, PageID.1562] | "Are we truly obligated?" regarding the scribe—showing awareness of an existing obligation. | Ropp is not "showing awareness of an existing obligation."  He is, in fact, questioning whether there is an obligation: "I'm totally missing something on the scribe.  Are we truly obligated?" ECF No. 34-2, PageID.1562] |
| Ex. 54 [ECF No. 34-4, PageID.1564] | Reports prior contract revision specifying "a scribe" for learning disability ; asks about ADA paperwork. | Koutouzos is not acknowledging a prior contract revision specifying a scribe, she is relaying what Plaintiff told her:  "Dr. Christensen indicated a prior revision of a contract that specified a "scribe" for his learning disability."  Furthermore, Koutouzos confirms that she was at least the third person to tell Plaintiff to submit his accommodation paperwork: "I asked him if he has filed the appropriate paperwork to comply with the ADA requirements . . ." [ECF No. 34-4, PageID.1564] |

**REBUTTAL TO PLAINTIFF'S EXHIBIT 44**

| Plaintiff's Citation | What Plaintiff Claims the Testimony/Exhibit Stated | What Testimony/Exhibit **Actually Stated** |
|---|---|---|
| Ex. 55 [ECF No. 34-5, PageID.1565] | Confirms leadership is "aware of his original agreement" but states scribe language will not be included going forward. | Plaintiff omits that part of the citation where Frye states that McLaren will continue what was in Plaintiff's original agreement--no scribe language: "We're aware of his original agreement, **and the scribe information will continue to not be included** in the employment agreements going forward." |
| Windy Dep., [ECF No. 31-4, PageID.642: 20-24] | Ms. Windy admits that Dr. C asked for a scribe for his disability. | Windy acknowledges that "Doctor Christensen had indicated he would like scribe and he made a comment that due to his disability." Windy also confirms, however that "**Doctor Ropp had mentioned at that time that he needs to make sure to complete the appropriate paperwork needed 24 for an accommodation, and that was it**." [ECF No. 31-4, PageID.642: 20-24]. |
| ECF No. 31-5, PageID. 715:25-716:15]. | Admits awareness Plaintiff had a learning disability and a compact saying he would receive a scribe. | Henry was aware that Plaintiff represented that he had a learning disability. With respect to the compact, Henry testified that she "saw a piece of paper" signed by Plaintiff but not by the Hospital. **Henry flatly denied that Plaintiff's employment contract provided for the continuing accommodation of a scribe.** ECF No. 31-5, PageID.715:25-716:15]. |

| Citation | What Plaintiff Claims the Testimony/Exhibit Stated | What Testimony/Exhibit **Actually Stated** |
|---|---|---|
| Henry Dep. ECF No. 31-5, PageID.744:11-20. | Acknowledges Plaintiff complained lack of scribe was impacting his ability in the clinic. Ex.4, P.58:15–17 (HR)decision maker | Henry was aware of Plaintiff's complaints, but her testimony evidences that she reinforced HR's need for the accommodation paperwork that Plaintiff refused to provide: <br><br> Q. Okay. In this meeting, did Doctor Christensen complain again about being discriminated against and subjected to a hostile work environment based on his learning disability? <br><br> A: As I recall, he complained about not having a scribe and feeling that was impacting his ability in the clinic. **That is, again, when I reiterated and, you know, discussed that we had a policy, that we had a process, to be able to accommodate and review the request that he had for accommodations.** [ECF 31-5, PageID 744:11-20, emphasis added] |
| Ropp Dep. 7/30/25 ECF No. 31-2, PageID.524:22-525:7 | Admits Plaintiff said working without a scribe made his job very difficult. Ex.1, P.22:11–13 <br><br> Confirms management required "paperwork" despite knowing he was dyslexic. Ex.1, P.22:18–19 decision maker | Ropp did not know that Plaintiff was dyslexic and was another person who told Plaintiff to submit the accommodation paperwork: <br><br> Q. At that point in time, were you – weren't you aware that he was dyslexic? <br><br> A: **No.** Again, there was some concerns that had been brought up, but **we wanted to make sure that we actually had the appropriate paperwork that he actually was dyslexic**. And Doctor Christensen was given the opportunity to present that to us. [ECF No. 31-2, PageID.524:22-525:7] |