UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARLES H. CHRISTENSEN, D.O.,

        Plaintiff,

v.

MCLAREN MEDICAL GROUP, a
subsidiary of MCLAREN HEALTH
CARE CORPORATION,

        Defendant.

Case No. 24-cv-12642

**Hon. Robert J. White**

---

Charles H. Christensen DO (pro se)
3697 Port Austin Rd.
Port Austin, MI 48467
(989) 768-0529
chas1969@hotmail.com

Terrence J. Miglio (P30541)
Barbara E. Buchanan (P55084)
BUTZEL LONG P.C.
Attorneys for Defendant
201 W. Big Beaver, Suite 1200
Troy, MI  48084
(248) 258-1616
miglio@butzel.com
buchanan@butzel.com

---

**PLAINTIFF'S LIMITED SUR-REPLY TO DEFENDANTS' REPLY IN**

**SUPPORT OF SUMMARY JUDGMENT**

Defendant's rebuttal exhibits do not eliminate the genuine disputes identified in Plaintiff's response. Defendant argues that Plaintiff "mischaracterized" deposition testimony and exhibits. But even where Defendant proposes an alternative reading, the underlying issue remains whether a reasonable jury could read the evidence in Plaintiff's favor. Defendants' Reply does not erase the record conflicts; it confirms them.

**First**, Defendants' rebuttal to Plaintiff's Exhibit 83 repeatedly reduces testimonial inconsistencies to "one person simply knowing a fact and another person not knowing that fact," or asserts that the conflict is "not of consequence" or "immaterial." But that is an argument about weight, significance, and credibility. It is not a basis to disregard record conflicts on summary judgment. Where witnesses differ on disability knowledge, accommodation request history, who entered Plaintiff's office, August 29–30 communications, who was present, what was investigated, and what decision makers knew, those conflicts remain jury questions. The significance of those facts is tied directly to Plaintiff's theories of pretext, knowledge, process failures, retaliatory motive, and public handling of the August 30 event. Defendant's rebuttal to Plaintiff's Exhibit 83 misstates the record in several respects. Ms. Henry testified that HR does not directly engage with disabled employees to determine accommodations (Henry Dep., p. 39:1–8). Defendant further claims Ms. Henry called police, yet her name does not appear in

the Police Report (Pl.'s Resp. to SJ, Ex. 100). Defendant also asserts that Ms. Windy knew Friday was Dr. C.'s day off, although she testified she did not (Windy Dep., p. 48:12–15). Finally, Defendant characterizes the evacuation as a joint effort, while the Police Report identifies Officer McGrath and Trooper Hawkins as the individuals who conducted the evacuation; and deposition testimony identifies the previously referenced "unknown male" as local hospital COO Matt Rick (Rates Dep., p. 52:4–7).

**Second**, MMG argues that the Pinelli meeting transcript should be read only as a staffing or communication discussion and not as evidence relevant to disability or accommodation issues. But the fact that the meeting involved staff concerns does not foreclose a reasonable reading that disability, scribe function, Dr. C's mental health problem, and operational breakdown were also part of the discussion. Defendants' reply simply advances a myopic interpretation of the transcript.

**Third**, MMG continues to press a theme that Dr. C. failed to provide proper accommodation paperwork. But even on MMG's own telling, the record reflects repeated notice to management and HR of Dr. C's asserted learning disability, his request for a scribe, his complaints that lack of a scribe was impairing clinic function, and HR's awareness of those complaints. The issue is whether, in light of the full record, MMG engaged in a genuine and effective process rather than using paperwork as a shield while the accommodation dispute escalated. Also, nowhere

in its reply MMG acknowledged that Dr. C. did offer his diagnostic file and history of accommodations to HR. (Plaintiff's Response to SJ, Ex. 47.)

**Fourth**, Defendant's new use of the Sept. 12, 2023 email does not resolve the scribe issue in their favor. At most, that email shows one management response and MMG's own interpretation of prior complaints. It does not eliminate the factual dispute over the necessity, effectiveness, and continuity of Plaintiff's longstanding scribe support, nor does it negate Plaintiff's evidence that the issue persisted and that prior concerns had been raised. (Plaintiff's Response to SJ, Exs. 34, 51, 58.)

**Fifth**, MMG's reply confirms the very policy violation Dr. C. identified. (Plaintiff's Response to SJ, Ex. 18.) Ms. Henry testified that it was not her responsibility to ensure that an accommodation was effective and that HR was not responsible for interpreting or relying on medical information provided by the employee. Yet MMG's own Reasonable Accommodation Policy requires HR to engage in a dialogue with the employee and to evaluate the effectiveness of accommodation options. Id. By disavowing responsibility for effectiveness and medical information, Defendant's senior HR official effectively disclaimed the duties expressly assigned to HR under its own policy and under the ADA. This is evidence that the required interactive process was never meaningfully performed.

**Sixth**, Defendant's rebuttal attempts to sidestep the central function of Exhibit 44 by focusing on technicalities in wording and circumstance. But the exhibit serves a

narrow evidentiary purpose—to establish knowledge. Repeated notification cannot be erased by debating phrasing, nor can awareness be undone by bureaucratic disagreement over how the information was conveyed.

**Seventh**, far from undermining Plaintiff's case, Exhibit 55 shows that MMG knew of the scribe issue and chose not to address it. The email reflects a conscious decision to exclude the scribe from the employment agreement, further demonstrating MMG's knowledge of Dr. C's accommodation needs. A jury could view this as evidence that Defendant knew of the problem but declined to engage in the interactive process.

In the end, MMG's reply does not show an absence of genuine dispute. It shows that it disagrees with Plaintiff's reading of the record. Rule 56 does not allow the Court to adopt Defendants' preferred inference where the record supports competing ones. For that reason, summary judgment should be denied.

Respectfully submitted,

Charles Christensen, Plaintiff Pro Se

/s/Charles Christensen

Dated: April 15, 2026